## Porter Vinton v. Horace B. Peck.

*Note made on Sunday. Bona fide holder.* A note actually made on Sunday, but dated on Monday, for the purpose of giving it credit, is not necessarily void. The statute has not declared that notes made contrary to the Sunday law, shall be void under all circumstances. Their invalidity is only to be implied from the prohibition of Sunday business, and under such a statute a *bona fide* holder is protected.

And where steps are taken to induce a belief that a note was not made on Sunday, the party so doing would not be allowed to assert his own fraud, in his defense.

*Forgery. Testimony of experts.* The defendant alleged that the note was in fact for eight dollars, and had been altered to eighty. A witness who had been a conveyancer for twenty-five years testified that the note was genuine. He was then asked, whether, in his opinion the word eight had been altered to eighty since its execution. *Held*, that this was competent and proper to go to the jury, to aid them in forming their opinion.

*Comparison of handwritings.* Witnesses may be allowed to compare the writing in question with the appeal bond on file in the same case, admitted to be signed by the defendant, or with any other writing legitimately introduced into the case under the issue, in order to judge of the genuineness of the writing to be proved.

This kind of evidence must often be quite as satisfactory as the very small amount of knowledge of the party's handwriting, necessary to render a witness competent to testify to his opinion of the genuineness of a signature, in the usual manner of giving such opinions.

*Comparison limited.* The rule has been inflexibly settled, that disputed papers, which do not belong in the cause, and are not involved in the issue, cannot have their genuineness made a question of inquiry, and cannot therefore be made a basis of comparison, for either witness or jury. Such comparison as is allowed may be made by the jury for themselves. But they can better do it, generally, with the aid of experts, than without,

The defendant offered to prove that a note to one Gould was signed and given to him by the defendant, and that both this and the one sued upon were executed at his house at about the same time. *Held*, that this was not admissible, as it raised an issue as to the genuineness of the note to Gould, which was entirely foreign to the issue in the case, and was within the excluding rules above stated.

*Who is an expert?* A witness was offered to prove that Gould's note was not written with the same ink with the note in suit. He was shown to have been a writingmaster and book-keeper of considerable experience, but was rejected because it had not been shown that he was an expert in regard to color. *Held*, that any experience in using pen and ink would qualify a person of ordinary capacity to form an admissible opinion concerning such identity, although it might be of very small weight in doubtful circumstances. It stands on the same footing with other inquiries concerning handwriting. But as that note was inadmissible, the exclusion of the testimony worked no injury.

The holder having purchased the note of a party employed by the original parties to negotiate it, at less than its face, is not the less a *bona fide* holder, on that account, and is entitled to recover the full amount.

*Heard April 3d and 4th. Decided May 5th.*

Error to Kalamazoo Circuit.

This suit was brought by Horace B. Peck as indorsee against Porter Vinton, as maker of a negotiable promissory note.

It appears that the note was post dated; that it was in fact executed by Porter Vinton, and delivered to the payee, Z. H. Bullard, on the first day of June, 1862, which was Sunday, at which time it was dated June 2d, 1862. That it was without consideration between the maker and payee, being given for the accommodation of the payee, to enable him, by negotiating it to raise money thereon. That on Monday, June 2d, the day the note bears date, it was indorsed in blank by the payee, Z. H. Bullard, and sold and delivered to the plaintiff below, Horace B. Peck, for the sum of $77. That said plaintiff had no notice of its character, either that it was an accommodation note, or that it was executed on Sunday, but received it in good faith, supposing it to be business paper, and actually executed on the day it purported to be.

The note was admitted in evidence under objection, and judgment for principal and interest rendered for plaintiff below.

*Stuart & Edwards*, and *H. F. Severens*, for plaintiff in error.

1. The making and delivery of a promissory note on Sunday is void.—1 *Comp. L.* § 1574.

The statute takes away the legal capacity of the maker to make such an instrument on Sunday.—12 *Mich.* 378.

Proof of the making of the note is essential to enable an endorser to recover; and this discloses that the maker was legally incapable of making the note on that day. And it is a rule that a bona fide holder is not protected against the defense of incapacity however created.—1 *Pars. Notes and Bills*, 275.

2. There is no estoppel here. In order to create one, the representation relied upon to establish it must be extrinsic to

the paper itself; otherwise no defense, whether of fraud, want of capacity, duress, gaming or usury, could be interposed when the note purported to be valid on its face. This cannot be insisted on.—13 *N. Y.* 599–638; 22 *Id.* 342; 4 *Duer*, 408.

3. The plaintiff in this case is not a bona fide indorsee, within the meaning of the law of merchants, and therefore, not protected by its peculiar rules; for,

*a.* He did not take the note at its face, but for a less sum.— 16 *Barb.* 548; 7 *Allen*, 407.

*b.* Being accommodation paper lent by defendant to Bullard, it first became legally operative in plaintiff's hands.— 10 *Gray*, 349; 7 *Allen*, 407; 2 *Denio.* 621; 22 *N. Y.* 312; 1 *Kern.* 368; 1 *Hill*, 9; 8 *Cow.* 669; 36 *Barb.* 585.

The date of a note is of no consequence, except for the purpose of determining the time of payment; and the time of delivery may always be shown.

4. The Court erred in permitting the witnesses to make a comparison of handwriting, and stating their conclusions to the jury.

The great majority of the cases are against allowing any witness to make a comparison of the handwriting of the signature in question, with other admitted signatures, and then giving an opinion upon the genuineness of the one in dispute, but have generally allowed the jury to make the comparison by contrasting the disputed signature with that of any other documents relevant to the issue already in the case. This is the well established rule in England.—2 *Phil. Ev.* (*Cow. & H. notes*) 615–6 *and n.* 2 *and* 483; 5 *A. & E.* 514–703; *Roscoe. Crim. Ev.* 163; 2 *Starkie Ev.* 374, *note h.* (*6th Am. ed.*); *Peake Ev.* 155 (*5th ed.*)

And it is likewise the rule in nearly all the States.—7 *Pet.* 763; 1 *Denio.* 343; 13 *Barb.* 42; 1 *Penn.* 161; 26 *Id.* 388; 8 *Gill.* 77; 1 *Iredell*, 16; 2 *Ala.* 703; 5 *Id.* 547; 13 *B. Mon.* 258; 21 *Ill.* 375; 15 *Ind.* 271.

*J. C. Burrows,* for defendant in error.

1. The Court below did not err in allowing the note to be introduced in evidence under the objection that it was void, and therefore immaterial. For a promissory note, executed and delivered to the payee on Sunday, is not void in the hands of an indorsee who receives it without notice of its infirmity.— *Story on Prom. Notes,* §§ 191, 192, 193 ; 2 *Hill,* 499 ; 6 *Wend.* 615 ; 3 *Gray,* 215 ; 9 *Id.* 329 ; 19 *N. H.* 423 ; 4 *Mass.* 156 ; 3 *B. & C.* 233.

2. The Court below did not err in charging the jury that the defendant was precluded from setting up as a defense that the note was made on Sunday, by having issued the same as made on a legal day.

The plaintiff below bought the note in good faith, having no notice of its fraudulent dating. Defendant cannot take advantage of his own wrong.

3. The plaintiff being a bona fide purchaser, was entitled to recover of the maker the face of the note and the interest.— *Story on Prom. Notes,* § 194 ; *Edw. on Bills and Notes,* 315 ; 3 *Esp.* 46 ; 1 *Id.* 261 ; 13 *Johns.* 52 ; 16 *Pet.* 1–24 ; 5 *Allen,* 330.

CAMPBELL J.

Peck sued Vinton upon a promissory note, dated June 2d, 1862, and payable three months after date to the order of Z. H. Bullard, who endorsed it to Peck. Bullard testified that the note was made for his accommodation on Sunday, June 1st, and delivered to him, and that on Monday he endorsed it and put it into the hands of an agent, one Alley, to negotiate. Upon offering to read the note in evidence, it was objected to, because made on Sunday. The Court admitted it in evidence, and Vinton excepted.

We do not think the objection well founded. This note bore upon its face a legal date, which was placed upon it for the express purpose of obtaining credit for it as a lawful

instrument; and it would certainly be valid in the hands of a *bona fide* holder. The statute has not declared that notes made contrary to the Sunday law, shall be void under all circumstances. Their invalidity is only to be implied from the prohibition of Sunday business, and under such a statute, a *bona fide* holder is protected.—*Rockwell v. Charles*, 2 *Hill*, 499 ; *Vallett v. Parker*, 6 *Wend.* 615. And, apart from this rule, where steps are taken to induce a belief that a note was not made on Sunday, we should not be prepared to hold that a party could assert his own fraud, in his defence.

Vinton, upon the trial, set up in defence that the note was either altered or forged, claiming he gave no note for more than eight dollars, whereas the note sued on was for eighty. One George T. Clark was called for Peck, and swore that he had been a Conveyancer and Notary Public for twenty-five years, and was familiar with Vinton's handwriting, and that the note was genuine. He was then asked whether, in his opinion, the word eight had been altered to eighty since its execution. This was objected to, and the objection overruled, and an exception taken. He stated that he thought it had not been altered, and on cross-examination stated the " y" could not have been added, because of its relation to other letters. This testimony was proper. The witness was engaged in a business which would be quite apt to familiarize him with all the ordinary appearances of writings, and the addition of a letter, after a document has been finished, is so generally adapted to give it a peculiar and recognizable appearance, that no great amount of experience would be necessary to detect it in ordinary cases. The value of a witness's belief must depend upon circumstances, but it is proper to go to the jury like other questions upon the genuineness of writings. It is very true that the jury may examine the paper for themselves, and that opinions are not usually admissible where the jury can form their own conclusions unaided. But we do not think it would be safe in this country to adopt a rule which assumes such a degree of knowledge and skill among jurors. Even

reasonably expert writers may obtain valuable aid from opinions on such questions, and as neither law nor custom requires our juries to meet any standard of education, we think that to exclude such aid would lead to absurd results. The most enlightened courts have availed themselves of such assistance, and we deem it wise to use it in all cases where it is at hand. It can do no harm, at all events, and must often be indispensable to justice.

It is also assigned as error that several witnesses were allowed to compare the note in suit with the appeal bond and affidavit on file in the cause, which were admitted to be signed by Vinton. It is claimed that they were not shown to be experts. In proving handwriting in general there is no rule which requires any particular amount of skill in the witness. Any one who has had the proper facilities, and who can swear to a knowledge of the handwriting in question, has always been admitted. There are undoubtedly questions presented at times, which require greater skill than others, but such cases stand on their own grounds. It is a matter of common experience that all persons who can write at all can attain some familiarity with the handwriting of others, and we can find no test which would be at all practicable, except that of leaving their skill and capacity to be determined by the jury who hear them examined.

A more serious question is, whether the comparison here resorted to was admissible at all. It has very commonly been said that a witness must obtain his knowledge of handwriting by seeing the party write, or from papers in his own possession which he knows to be genuine, by recognition, or dealing mutually had on their credit. Proof by comparison of hands on the trial has not always been deemed competent, and there are many authorities which deny its admissibility at all. Upon a subject which has been so much discussed, and upon which there is so wide a variance of opinion, we think the safest course is to satisfy ourselves concerning the principles involved, and frame our conclusions accordingly.

It has never been required that a witness should have seen any particular number of specimens or acts of handwriting. On the contrary, seeing a person write once, has been held sufficient.—*Garrells v. Alexander*, 4 *Esp.* 37; *Doe v. Suckermore*, 5 *A. and E.* 733, (*Patterson J.*); *Willman v. Worrall*, 8 *C. and P.* 380. In *Burr v. Harper*, *Holt's N. P.* 420, a witness had seen the person write but once, and had forgotten how the signature appeared, but was allowed to compare the signature in question with the paper in his possession, and then to swear to his opinion. In *Smith v. Sainsbury*, 5 *C. and P.* 196, a witness was allowed to swear to an opinion of handwriting, formed from seeing a single affidavit used by counsel in making a motion in the cause, without any other knowledge of its genuineness. In *Lewis v. Sapio*, *Mo. and M.* 39, Lord Tenterden allowed proof of an entire signature by a witness who had seen the party sign his last name several times, but who had never seen his initials or full name written, and he censured Lord Ellenborough for deciding in *Powell v. Ford*, 2 *Stark*, 164, that once seeing the last name written did not qualify the witness to swear to the full signature.

This small amount of knowledge being all that is requisite in a witness, it becomes a serious matter of inquiry why a recollection from a former comparison, or from a former notice of writings, where there may have been no special reason for making a critical examination, should be considered better than a recent and careful scrutiny.

In the case of ancient documents proof by comparison has always been permitted, although the comparison can only be made by proving the genuineness of papers not involved in the cause. *Doe v. Tarver*, *Ry. and M.* 141. The right to establish handwriting by comparison in other cases has been denied on two grounds; *first*, because the specimens for comparison may be unfairly selected, and *second*, because proof of the genuineness of the specimens would raise collateral issues which would cumber the case, and which the party could not be supposed to be ready to meet. Accordingly the rule has been inflexi-

bly, and we think justly settled, that disputed papers which do not belong in the cause, and are not involved in the issue, cannot have their genuineness made a question of inquiry in the cause, and cannot therefore be made a basis of comparison for either witnesses or jury.—*Doe v. Newton*, 5 *Ad. and El.* 514; *Griffits v. Ivery*, 11 *Id.* 322; *Hughes v. Rogers*, 8 *M. and W.* 123; *Bromage v. Rice*, 7 *C. and P.* 548. There is one English case in which the Court of Queen's Bench was equally divided upon the question whether, after an attesting witness had in his testimony stated several specimens of his signature (including his attestation) to be genuine, an expert might be allowed to compare them all (relevant as well as irrelevant) to ascertain whether the attestation was genuine. The course of the discussion on the bench elicited the most complete investigation of the various methods of proving handwriting which is to be found in the books, and while it seems dangerous to allow comparison by disputed documents and signatures, the reasons for allowing it among those not disputed are very forcibly set forth,—*Doe v. Suckermore*, 5 *A. and E.* 733. Where papers are already in the case, it is held almost if not quite universally, that the jury may make the comparison for themselves. 1 *Greenl. Ev.* § 578. Mr. Greenleaf gives it as his opinion that this comparison may be made with or without the aid of experts. In *Doe v. Newton*, (before cited,) it is said that the Court should enter into this inquiry with the jury, but it is doubtful whether it was meant to intimate that witnesses should be examined for that purpose. The general English rule would seem to be that the jury must form their own opinions from the comparison. And the English authorities agree in saying that the objection that a jury may be illiterate cannot now have any weight. But it cannot be denied that, even among intelligent men, there is much difference in regard to the capacity of forming an accurate judgment by comparison, while all persons who can read and write can form some sort of an opinion. Experts can certainly aid a jury very much in these inquiries, and, if any are admitted,

the degree of their skill cannot be nicely measured. But, as we have already remarked, we think the presumption cannot safely be raised that all jurors here can be qualified to form opinions for themselves upon questions of handwriting; and while, if capable, they may properly make comparison, it is safer and better, we think, to make sure that they receive such light as is accessible.

Where, as in the present case, the papers used as means of comparison are a part of the records in the cause, and undisputed, it is held by the authorities cited that the jury can compare them, and that a witness may also use them, to form an opinion concerning handwriting; — and no objection can arise on the ground that they can have been specially selected as a standard. We should feel disposed to say—had not the doctrine become almost venerable from much repetition — that there is nothing in ordinary experience which could lead any one to suppose that a person cannot form a better judgment of resemblances in writing from having the specimens before him, than from any mere effort of memory. And we feel constrained to hold that a comparison of hands by witnesses, where there is an undisputed standard in the cause, or where documents are fairly before the jury upon the issues, is allowable.

The deposition of one Aretas Gould was offered in evidence, the object of it being to prove that on the same day on which the note in question was said to have been executed, Vinton signed and gave Gould a note written with the same pen and ink, and that both of the genuine notes were executed at his house at about the same time. The Court, upon objection, refused to permit this to be read, because it would tend to raise a collateral issue. Vinton then offered, in connection with it, to show that he gave Gould on that occasion a note signed with the same pen and ink with which whatever note he gave Bullard was signed. The Court then admitted the deposition to be read for that purpose. As this was the only purpose for which it could have any pertinency at all, we do not perceive what occasion he had to complain of the restriction to that

use. We think it should have been excluded altogether, as it raised a necessary issue on the genuineness of the note to Gould, which was entirely foreign to the issue in the case, and is within the excluding rules already referred to.

A witness was offered to prove that Gould's note was not written with the same ink with the note in suit. He was shown to have been a writing-master and book-keeper of considerable experience, but was rejected because it had not been shown he was an expert in regard to color. We think any experience in using pen and ink would qualify a person of ordinary capacity to form an admissible opinion, concerning such identity, although it might be of very small weight under doubtful circumstances. It stands upon the same footing with other inquiries concerning handwriting. But as the Gould note was not admisible as a subject of comparison, the rejection of the testimony cannot be regarded as error.

The Court instructed the jury, if the note was genuine, to find a verdict for its full amount, although purchased at a discount. We think there is no error in this. The maker of a note has no concern with the amount paid for it by a *bona fide* purchaser.

There is no error in the judgment, and it must be affirmed.

Christiancy and Cooley JJ. concurred.

MARTIN C. J.

The Circuit Judge was correct in overruling the objection of the plaintiff in error to the reading of the note to the jury, and in his charge respecting its validity, and of the right of Peck to recover upon it. It is true that the note was made upon Sunday the first of June, but it was dated as of Monday the second. Whether as between the maker and payee this fact, that the note was made upon Sunday, would render it void, it is not necessary to consider. No such question arises in this case, and no principle which would affect or control in such a case, would govern this. This note was not made

upon any consideration passing from the payee to the maker, or to satisfy any existing liability, nor was it in fact a contract between the parties. The case shows that it was accommodation paper lent by Vinton to one Bullard, to be thrown upon the market for sale or discount for Bullard's benefit. On the day of its date it was discounted or purchased by Peck, and as argued by the counsel for Vinton, it first became legally operative in his hands. It is not claimed or pretended that Peck knew or suspected that the note was made upon Sunday, or upon any other day than that which its date indicated, or knew anything of its origin or the design of the parties to it in making it.

It would be a most extraordinary, as well as inequitable rule, which would require Peck under the circumstances attending the offer of the note to him, to make inquiries respecting the genuineness of its date, or to be made a loser by an illegal or fraudulent transaction in which he had no participation. The date of the note is conclusive upon Vinton and upon every principle of law, and of equity, he is estopped to deny that it is the true date, or to insist upon the invalidity of the paper.

I can discover nothing in this case which shows that Peck is not a *bona fide* endorsee of the note, and entitled to protection as such. The fact that he purchased the note for some three dollars less than its face, does not, in my opinion, make him any the less such, or in any degree affect his rights as endorsee, and upon what principle a contrary doctrine can be held, is to me incomprehensible. The note was made for the market, and negotiated accordingly, and purchased by Peck as such. This is obvious from the fact, that one Alley was employed to dispose of it, or as he says, get it discounted. The transaction then was not usurious, nothing more than a fair purchase of paper offered for sale, and taken by Peck on the best terms he could make, it is to be supposed. Is there anything wrong in this? He had no negotiation with Bullard or Vinton, and what he did, was done, so far as appears, in

the way of purchase and sale with Alley. For aught that appears he may have thought the note belonged to Alley, and was offered by him for sale as his property, and purchased as such. He was therefore entitled to all that he purchased, and the Circuit Judge committed no error in charging to that effect. (*See cases cited by defendant in error.*)

The exceptions taken to the rulings of the Circuit Judge, upon the admission of testimony to prove the signature of Vinton genuine, may all be disposed of together. The exception taken by the plaintiff in error is, substantially, that "the Court erred in permitting the witnesses to make a comparison of handwritings, and state their conclusions to the jury," and if permitted, by none but experts. This is a subject upon which much diversity of opinion exists in the courts of the different states, as will be seen by a perusal of Prof. Greenleaf's excellent and exhaustive discussion of this question. (*See* 1 *Greenl. Ev.* §§ 576–581, 10*th ed.*) It seems hardly proper that after so exhaustive a discussion of this question, in a text-book, presumed to be within every lawyers reach, we should do more than adopt such a rule, as we think most consonant to, and best adapted to our system of jurisprudence. Under our system parties can be sworn, and there is no possible way of sustaining or controverting the statements of the defendant, except by the testimony of persons who witnessed the execution of the instrument, or those who are competent to compare it with others admitted to be genuine, (so as to prevent the occurrence of a collateral issue), or to allow the jury to make the comparison from papers admitted to be genuine. I think that comparison of handwritings by a witness, or by the jury, are equally competent. The presumption of incompetency in a jury is, I trust, exploded, and any business man, of whatever calling, who is in the habit of correspondence or of examining writing, or under whose eye it continually comes, is an expert and competent witness. Either to allow the jury, or experts, to make this comparison, or both, is within the discretion of the Court—to be exercised

according to the peculiar circumstances of the case. (*See Greenleaf supra.*) Testimony was introduced upon both sides upon the questions of forgery of signature, and of the alteration of the note. These questions were left to the· jury, and we cannot disturb the verdict.

The judgment must be affirmed, with costs.