FRED GOOCH, Appellant, v. E. E. GOOCH et al., Appellees.

BILLS AND NOTES: Validity—Execution on Sunday with Secular
1  Date—Rights of Assignee.   The maker of a promissory note,
which was in fact executed on Sunday, *but which bears a' secular
date*, may not plead such Sunday execution against an assignee
of the note who had no knowledge of such execution, even though
such assignee received the note *subsequent to maturity*, and paid
nothing therefor beyond satisfying a moral obligation voluntarily
recognized by the original payee of the note.

CONTRACTS: Validity—Parties Not In Pari Delicto. One will not
2  be permitted, against an innocent party, to take any advantage
from his own wrong.   So held where the maker of a Sunday con-
tract, which bore a secular date, was denied the right to plead
such execution against an innocent assignee.

CONTRACTS: Consideration—Past Consideration—Moral Obliga-
3  tion.   A past consideration or a strictly moral obligation will
not constitute a *valuable* consideration, but is sufficient to vest
full title in an assignee to a note assigned in satisfaction of such
past consideration or moral obligation.

ASSIGNMENTS: Rights of Parties—Assignee of Sunday Contract.
4  An assignee of a negotiable promissory note *may* have greater
rights than the original payee of the note.   So held where the
maker of a note, which was executed on Sunday, but which bore
a secular date, sought to plead the Sunday execution against an
innocent assignee.

*Appeal from Polk District Court.*—WM. H. McHENRY, Judge.

SATURDAY, DECEMBER 16, 1916.

ACTION at law upon a promissory note made and executed
by defendant to one T. J. Gooch, and by the latter assigned
to plaintiff.   The defense was that the note was executed and
delivered on Sunday.   The case was tried to the court, with-
out a jury, resulting in a judgment dismissing the petition.,
Plaintiff appeals.—*Reversed* and *Remanded.*

*William B. Brown,* for appellant.

*Bowen & Alberson,* for appellees.

DEEMER, J.—The action is bottomed upon a note for $1,000, due one month after date. It is dated October 19, 1912, and bore interest at the rate of 8 per cent.

1. BILLS AND NOTES: validity: execution on Sunday with secular date: rights of assignee.

The defense is that, although the note bears a secular date, it was in fact executed and delivered on Sunday, the 20th of October, 1912. The defendants also averred that the note was transferred to the plaintiff after maturity, without any consideration passing from the assignee to the assignor thereof. Plaintiff, in reply, pleaded that the note in suit, with another, was given in renewal of certain other notes theretofore executed by the makers for money borrowed by them; that the payee did not know the note was executed on Sunday; that it bore a secular date, and that he assumed it was made on the date it bore. He also pleaded that the note was transferred to him after maturity, for a good and valuable consideration, and that thereafter, and on a week day, the defendants admitted the execution of the note, and ratified the same. It was on these issues that the case was tried, resulting in a judgment dismissing the petition, at plaintiff's costs.

The trial court found that the note was executed on Sunday, which the original payee knew, or must have known, and that it was transferred to plaintiff after maturity, without any valuable consideration then passing from plaintiff to the original payee. The truth about this is that there was no consideration which passed at the time of the assignment, but the note was transferred by the original payee to the plaintiff, who is his grandson: first, because of the grandfather's recognition of labor performed for him by the assignee upon a farm while he was a mere boy; and, second, because he had given each and all of his other grandchildren

something, and he wished to equalize the matter by giving plaintiff the note.

Plaintiff knew nothing regarding the date of the execution of the note, and did not know it was executed and delivered on Sunday. This note and another for $500 were executed in renewal of other notes made by the makers of the note in suit, for money borrowed of the payee, and the old notes were surrendered to the makers.

On the issue of ratification, plaintiff showed that defendant, E. E. Gooch, and his wife, L. C., in giving in their assessments for the year 1914 and 1915, stated that they had moneys and credits in the year 1914, $2,000 money in the bank, and that they owed T. J. Gooch the sum of $1,500 on notes; and that E. E. Gooch had $2,500 in money in the bank in the year 1911, and that they owed T. J. Gooch on notes, $1,600. The $1,500 in notes to T. J. Gooch is said to be the one in suit, and the other $500 one executed at the same time, and the $1,600 is said to be made up of these same two notes, and also an annuity of $100 they had agreed to pay to T. J. Gooch, their father.

These are the facts, as shown by the record, and the first question which arises is: Should plaintiff be defeated because the note was executed on Sunday? At common law, the fact that a note or other contract was executed on Sunday, was no defense to an action on the instrument. If that fact be a defense, it is because of our Sunday law. The statute on that subject, so far as material, reads as follows:

"If any person be found on the first day of the week, commonly called Sunday, engaged in carrying firearms, dancing, hunting, shooting, horse racing, or in any manner disturbing a worshiping assembly or private family, or in buying or selling property of any kind, or in any labor except that of necessity or charity, he shall be fined not more than five nor less than one dollar, and be imprisoned in the county jail until the fine, with costs of prosecution, shall be paid." See. 5040, Code, 1897.

The making of a note or contract on Sunday is held to be a violation of this act. *Sayre v. Wheeler,* 31 Iowa 112 (32 Iowa 559); *Pike v. King,* 16 Iowa 49. In some of the cases, it is said that a note executed on Sunday is void; but it is manifest, from our later decisions, that it was not the purpose to hold it void, but simply voidable. That is to say, a Sunday contract is good, unless challenged for invalidity because made in violation of the Sunday law, and it may be ratified on a secular day by a payment on the note, or a new promise to perform, or something equivalent thereto. *McIntosh v. Lee,* 57 Iowa 356; *Russell v. Murdock,* 79 Iowa 101; *Collins v. Collins,* 139 Iowa 703. Again, it is the almost universal holding of the courts that, while a negotiable note may, as between the parties, be avoided if made on Sunday, yet, if it appears on its face to have been made on a secular day, and is transferred in good faith for value before maturity to one having no knowledge of any infirmity therein, the transferee may enforce the same, although made on Sunday. *Clinton Nat. Bank v. Graves,* 48 Iowa 228; 1 Daniel on Negotiable Instruments (6th Ed.), Sec. 70, and cases cited— among them, *Cranson v. Goss,* 107 Mass. 439; *Knox v. Clifford,* 38 Wis. 651.

2. CONTRACTS: validity: parties not *in pari delicto.*

We have also held that such a defense cannot be interposed if the transfer be made after maturity, if the note itself bears a secular date. *Leightman v. Kadetska,* 58 Iowa 676; *Johns v. Bailey,* 45 Iowa 241. In the *Leightman* case, supra, it was said:

"The defendant, Ludwig, insists that as the note was transferred to the plaintiff after maturity, he took it subject to any defense which the defendant might have set up, if it had not been transferred, and an action had been brought thereon by the payee. That the defendant may, in such case, set up any equity which existed in his favor, as against the payee is, of course, not to be denied. But the defendant's difficulty is, that he does not show that any

equity existed in his favor as against the payee. The rule which would have allowed the defendant to defeat the action if it had been brought by the payee, is not based upon such idea. The point presented in this case was expressly ruled in *Johns v. Bailey*, 45 Iowa 241. It is only against a person in equal fault that a defendant can be allowed to allege his own turpitude.''

It is true that, in that case, the note was transferred after maturity for value, which, we suppose, means that there was a present valuable consideration. The instant case differs from that, only in the fact that no present consideration passed for the transfer to the plaintiff. It cannot be said that the endorsement to plaintiff was upon a valuable consideration, or for value. The consideration was what has been called a past one, or a moral obligation to pay the plaintiff for services which he rendered the assignor of the note, there being no expectation on the part of either, at the time the services were made, that payment should be made therefor. Under the law, neither amounts to a valuable consideration. *Allen v. Bryson*, 67 Iowa 591. But the consideration was a good one, because based upon love and affection which the father, the endorser, had for his grandson, the endorsee, and the assignment was good, and vested the title to the note in the assignee. This would be true even if the transaction amounted to a gift. Whether or not such an assignee takes a note in fact executed on Sunday, but apparently made and delivered on a secular day, subject to the defense that it was executed and delivered on Sunday, depends upon the rationale of the rule which permits recovery upon a contract in fact made and delivered in violation of the statute which we have quoted. This appears from the following quotation from *Johns v. Bailey*, 45 Iowa 241:

3. CONTRACTS: consideration: past consideration: moral obligation.

''It has been repeatedly held by this court that a contract executed on Sunday, as between the parties, is of no effect and will not be enforced by the courts of this state.

The decisions are based upon the principle that contracts in violation of law are without binding force; the parties thereto, being *in delicto,* can claim no rights under them. Secular employment is forbidden on Sunday by the laws of this state; contracts, therefore, cannot be entered into on that day without a violation of law, and cannot be enforced. The ground of the principle upon which such a contract is pronounced invalid is the violation of the law by the parties thereto. It is *causa turpis.* The parties to the contract are *participes criminis,* and are *in pari delicto;* neither can enforce the contract, for both are violators of the law. A contract made on Sunday is not a nullity. If for labor which is performed on another day by one party, the other cannot set up its turpitude to defeat an action thereon against him. *Meriwether v. Smith,* 44 Ga. 541. It is not wholly inoperative, for when executed no relief will be granted to either party. *Myers v. Meinrath,* 101 Mass. 366. When such a contract is spoken of as being void, the language is understood to mean voidable, that is, it may be defeated, cannot be enforced by action. See *Pike v. King,* 16 Iowa 49; *Adams v. Gay,* 19 Vt. 358. We know of no reason why a written contract made on Sunday may not be transferred by proper writing. Surely, such a transfer would be valid between the parties thereto. If the contract is not a nullity, it may be transferred. When transferred, what are the rights of the parties? If the assignee took no part in the inception of the contract, and had no notice of its turpitude, he did not violate the law forbidding the execution of the instrument. He is not *particeps criminis* with the obligor. The rule, *ex turpi causa non oritur actio,* will not avail to protect a wrongdoer against an innocent party whose rights have been acquired without notice of the violation of law. *Quirk v. Thomas,* 6 Mich. 76. The courts will afford relief where parties to an illegal contract are not *in pari delicto. Schermerhorn v. Talman,* 14 N. Y. 93; *Tracy v. Talmage,* Id., 162; *Quirk v. Thomas,* supra. In order to defeat a contract made on Sunday, it

must be shown that the party seeking to enforce it had some voluntary agency in consummating the contract on that day. *Sargeant v. Butts,* 21 Vt. 99.

"II.   In the case before us the plaintiff caused the contract to be dated as though it had been executed on a secular day.  By this act the defendants may have been misled and induced to believe that the defense now made to the contract did not, in fact, exist.  While giving all the appearance of legality to his contract, plaintiff cannot set up its illegality to protect himself against the instrument when in the hands of a good faith holder without notice.  He is estopped to deny the validity of the instrument when he by his own act has given it such character.  See *Knox v. Clifford,* 38 Wis. 651; *Cranson v. Goss,* 107 Mass. 439, and authorities cited.  The foregoing views are not in conflict with any decision heretofore made by this court.  They certainly accord with the rules of equity, and lead to a result approved by justice.  Applying them to the case in hand, we hold that plaintiff cannot set up the execution of the contract on Sunday to defeat it in the hands of defendants, who are good faith purchasers for value and without notice of the illegality pleaded."

Much of this reasoning is borrowed from the leading case of *Cranson v. Goss,* 107 Mass. 439, opinion by Gray, J.  In that opinion, the court said:

"The ground upon which courts have refused to maintain actions on contracts made in contravention of statutes for the observance of the Lord's day, is the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. The general principle was long ago stated by Lord Mansfield, with his usual completeness and felicity of expression:  'The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant.  It is not for his sake, however, that

the objection is ever allowed; but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this: *Ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own statement or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgressions of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court' goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for when both are equally in fault, *potior est conditio defendentis.'  Holman v. Johnson,* Cowp. 341, 343. . . . The law simply refuses to allow either party to invoke any aid from the court to give effect to an illegal transaction in which he has taken part. In the present case, it is agreed that the contract which was the consideration of the note in suit was made on Sunday, and that the note was made, signed and fully delivered on Sunday to the original payee. Clearly, therefore, he could not have maintained an action upon it. But it is also agreed that the note bears date of a secular day; and that the plaintiff is a bona fide holder of the note, for a valuable consideration, and took it before it became due, without notice of any defect, illegality or other infirmity in the same. The plaintiff, therefore, not having participated in any violation of law, and having taken the note before its maturity for good consideration and without notice of any illegality in its inception, may maintain an action thereon against the maker. To hold otherwise would be to allow that party, who alone had been guilty of a breach of the law, to set up his own illegal act as a defense to the suit of an innocent party. This view is supported by the

judgment of all the courts, English and American, that have considered the question. *Begbie v. Levi,* 1 Cr. & Jerv. 180; 1 Tyrwh. 130; *Houliston v. Parsons,* 9 Upper Canada 681; *Crombie v. Overholtzer,* 11 Id. 55; *Bank of Cumberland v. Mayberry,* 48 Me. 198; *State Capital Bank v. Thompson,* 42 N. H. 369; *Vinton v. Peck,* 14 Mich. 287; *Saltmarsh v. Tuthill,* 13 Ala. 390, 406. And it is in accordance with the decisions of this court upon notes made in violation of other statutes, except those against usury and gaming, which last have often contained peculiar provisions, and, as observed by Chief Justice Shaw; 'declared that the note should be absolutely void to all intents and purposes, or, as is sometimes said, applied to the contract and not to the party.' *Cazet v. Field,* 9 Gray 329, 331; *Kendall v. Robertson,* 12 Cush. 156; *Williams v. Cheney,* 3 Gray 215, 222, and 8 Id. 206; *Phelps v. Decker,* 10 Mass. *267, 278; *Musson v. Fales,* 16 Id. 332, 335.''

Here, then, we have the reason for the rule, as it has recently been reannounced and applied by us in *Collins v. Collins,* 139 Iowa 703. Plaintiff in this action was not guilty of the violation of any statute, and he did not know that either of the parties to the instrument had violated any law in the execution and delivery of the note. He was not *in pari delicto* with either of the parties, and to permit defendant to defeat the note in the hands of an innocent holder, would allow defendant to take advantage of his own wrong.

This in no way offends against the general rule that an assignee has and can have no rights superior to those held by his assignor. Indeed, to the general rule thus announced, there are many exceptions. An assignee may

4. ASSIGNMENTS: rights of parties: assignee of Sunday contract. have greater rights than his assignor because of an estoppel arising against the obligor, or because, for reasons of public policy, or otherwise, the debtor may take advantage of a defense against his original creditor, which he cannot interpose against an assignee of that creditor. This case, as also the *Johns* case,

supra, from which we have quoted, are illustrations of that rule, or rather exceptions to the general one. There is another general rule which must often be applied, and that is, generally speaking, no one may take advantage of his own wrong or moral turpitude. Our Sunday statute does not declare transactions had on Sunday void, or expressly say that they are invalid. The invalidity arises because a penalty is imposed for doing the prohibited act, and neither party to the act may recover because of his own turpitude. An assignee of such a contract has been guilty of no wrong, and he does not even know that a wrong has been perpetrated; hence there is no reason why he should be punished or prevented from enforcing the note. As said by Gray, J., in the Massachusetts case from which we have quoted, to allow the maker of the note to plead the violation of a Sunday statute against one who had no part in the violation thereof, is to recognize the right of a party to take advantage of his own wrong, a thing which the law abhors. We are satisfied with our previous decisions on this question, and it follows that a defendant cannot rely upon the defense that the note was executed on Sunday. A note executed on Sunday may be ratified on a week day, and this ratification need not be supported by a new consideration. Payment upon the obligation, or any distinct recognition thereof on a secular day, is a sufficient ratification of the note to validate it. We need not determine whether there has been such a ratification as to validate the note. There is so much doubt about it that we do not wish to make any pronouncement upon that proposition at present. Under the rules hitherto announced by us, the trial court seems to have been in error in finding for the defendants, and its judgment must be and it is reversed, and the cause is remanded for a judgment in accord with this opinion.—*Reversed* and *Remanded*.

Weaver, Evans, Preston and Salinger, JJ., concur.