JOHN G. SHERMAN *et al.*

*v.*

JOHN WHITESIDE *et al.*

*Opinion filed June 19, 1901.*

1. COURTS—*equitable jurisdiction of county court in settlement of estates.* In the settlement of estates the county court, in a proper case, may, on motion, set aside at a subsequent term an order allowing a claim where fraud or mistake has intervened; but to enable the court to set aside the claim the facts alleged and proved must be such as would move a court of equity to entertain jurisdiction and set aside the judgment.

2. SAME—*when judgment of county court allowing claim is conclusive —fraud.* A judgment of the county court allowing a claim is conclusive against both the executors and the legatees with respect to the personal estate, and in order to entitle the legatees to have the claim re-litigated they must prove that it was allowed by fraud and collusion with the executors, and not through negligence.

3. EXECUTORS AND ADMINISTRATORS—*remedy where executor is negligent in allowing claim.* If an executor has been negligent in allowing claims those interested in the estate have their remedy on his bond; but a claimant cannot be forced to litigate his claim first with the executor and afterwards with the legatees or heirs, where there is no attempt to subject real estate which has descended to the heirs to the payment of the claim.

4. WORK AND LABOR—*rule concerning compensation where family relation exists.* If the family relation exists between persons by and for whom services are performed, an agreement to pay for such services must be established either by proof of an express contract or of facts which will justify the conclusion that the parties were dealing on the footing of a contract, and that both parties expected the services to be paid for.

5. SAME—*what competent to show that compensation for services was contemplated.* In establishing a claim for services in taking care of an aged relative, books kept by him containing charges for all articles and money furnished to the claimant for the latter's support and credits for his services, made at different periods, are competent evidence to show the relation between the parties, and that the services were not performed or the articles and money furnished in the discharge of the mutual duties of the family relation, but under a contract relation.

6. FRAUD—*what does not establish fraud and collusion in allowance of claim.* Fraud and collusion in the allowance of a claim for services in taking care of the testator are not established by the fact that his books containing charges against the claimant and credits for

his services, which were in the possession of the executors, were not produced by them on the hearing in the county court, where the claimant, in his bill of particulars, copied from such books all the charges against him, giving the estate credit therefor and not using any item therefrom as a charge against the estate, although he did not copy the credits for his services.

*Sherman* v. *Whiteside*, 93 Ill. App. 572, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of McHenry county; the Hon. CHARLES E. FULLER, Judge, presiding.

E. D. SHURTLEFF, and D. T. SMILEY, for appellants.

A. B. COON, and D. B. SHERWOOD, (I. R. CURTISS, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John Whiteside filed his claim in the county court of McHenry county against the estate of Zebulon E. Goodrich, deceased, on December 6, 1897, the day fixed for filing claims, for $3091.53, "balance due for services, care, nursing and attention from August 1, 1891, to August 8, 1897," the latter being the date of the death of said Goodrich. V. S. Lumley and George K. Bunker, the executors of the will of said Goodrich, objected to the allowance of the claim and employed an attorney to defend against it. It was continued to the next term and tried January 5, 1898, upon depositions and oral evidence, both parties being represented at the trial, and the court rendered judgment allowing the claim for the sum of $3021. On February 11, 1899, appellants, who are a portion of the legatees, filed their petition in the county court in this case against the appellees, the said claimant and executors, praying that the allowance of the claim be set aside and for a new trial thereof, that Whiteside be adjudged indebted to the estate, and that the amount of his in-

debtedness be ascertained and deducted from the legacy given him and the legacy be declared paid and canceled. The petition was amended and the court sustained a demurrer to the amended petition and dismissed it. The appellants took the case to the circuit court by appeal, where the demurrer was overruled and the petition was answered by appellees, and the appellee Whiteside also filed two special pleas. Upon a hearing of the issues the circuit court dismissed the petition, and the Appellate Court has affirmed the decree of dismissal.

The testator, Zebulon E. Goodrich, had never been married. By his will he gave a great number of specific legacies to different persons, among whom were the appellee John Whiteside and the appellants. He left personal estate to the amount of about $35,000 and real estate to the value of about $18,000. The will provided that after the payment of the legacies, amounting to $24,200, and the testator's debts and funeral expenses and costs of administration, the residue should be set off to the legatees in the same ratio as each specific legacy should bear to the whole amount bequeathed to all. Appellants are interested in the estate as legatees entitled to shares of the residue, and have such a standing in court as to enable them to institute the proceeding to set aside the allowance of a claim procured through fraud. The county court has such equitable jurisdiction in the administration of estates that it may in a proper case, on motion, at a subsequent term set aside an order allowing a claim where fraud or mistake has intervened. (*Schlink* v. *Maxton*, 153 Ill. 447.) The facts alleged and proved to enable the court to set aside the claim must be such as would move a court of equity to entertain jurisdiction and set aside the judgment.

In this case the personal estate is sufficient to pay all the debts, including this claim and all the legacies, and there will be no occasion to resort to real estate for their payment. In the absence of fraud, the judgment of the

county court allowing the claim is conclusive against both the executors and the legatees in respect to the personal estate.   If an executor has been delinquent in his duty the persons interested in the estate have their remedy on his bond, but a claimant cannot be forced to litigate his claim first with the executor and afterward with the legatees, or with heirs, where there is no attempt to subject real estate which has descended to the heirs to the payment of the claim.   This is conceded by appellants, who acknowledge that it was necessary, in order to set aside the allowance and entitle them to a new trial, for them to prove that the claim was allowed by fraud or fraudulent collusion with the executors, and not through mere negligence of such executors.   *Ward* v. *Durham*, 134 Ill. 195; *Gold* v. *Bailey*, 44 id. 491.

In the effort to fulfill such conceded requirement of law and establish fraud on the part of the claimant, appellants urge upon us that the claim was false, fictitious and entirely groundless, as the claimant well knew, and that fraud in its presentation is thereby proved.   They invoke the established rule that where the family relation exists, the law will presume that what one person does for another is done gratuitously and because of the relation.   In the ordinary case of services rendered by one person to another with the assent and approval of the person for whom they are rendered, the law raises an implied promise to pay; but where the family relation exists, the implication does not arise from the mere rendition of the service, and the law will rather infer that it was rendered on account of the mutual obligations between members of the same family.   In such case, an agreement to pay for services must be established either by proof of an express contract or of facts from which an inference of such an agreement will arise.   Such facts must justify the conclusion that the parties were dealing on the footing of contract, and that both parties expected the services to be paid for.   It is insisted that no such

facts existed, and that therefore the claim was utterly baseless and fraudulent. The facts proved by competent and legitimate evidence on that subject are substantially as follows:

The claimant, Whiteside, was a grand-nephew of the testator, Goodrich, and was raised by him from childhood in the same manner as his own son. He lived, during his minority, with Goodrich, except when he was sent away to school. After he became of age he remained with Goodrich, who was then an old and enfeebled man, performing services for him for a time, and he then went to Elgin, where he secured a position with an express company. He worked at Elgin about fourteen months, when Goodrich sent for him to return and take care of him. Goodrich expressed regret at taking him away from his business and prospects, but said that it was absolutely necessary for him to have some one and he sent for him, and he came back. A telegram was sent for him at the request of Goodrich, who was old and feeble and afflicted with a variety of diseases, among which was a malignant growth like a cancer. From that time he lived with Goodrich until his death. He gave up his employment at Elgin on the promise that he would be paid for taking care of Goodrich. During some of the time a portion of each week was given to some other business when Goodrich did not require his personal attention. During this time he was married and took his wife to Goodrich's to live. Goodrich kept what is called a "journal," in which he set down and charged to Whiteside everything furnished for his support and expenses, such as moneys advanced, clothes, books, medicine, laundry and barbers' bills, and every variety of personal expense. There was another book, called a "ledger," to which Goodrich transferred in gross the sums expended for Whiteside, and on this book he credited him with services during three different periods, one period after Whiteside became of age and before he went to Elgin and two periods after his return.

Whether these charges and credits are competent evidence that the articles were furnished or moneys advanced and the services performed, or not, they are evidence to show the relation between the parties, and that the services were not performed by Whiteside or the money advanced or articles furnished to him in the discharge of mutual duties as members of a common family. The fact that Goodrich kept an account of charges and credits shows that the relation was one where he understood that there was to be compensation for the services and charges for the money and articles furnished by him. The credits given for services are in the nature of admissions that the services were not gratuitous. The inference from the fact of the account being kept is that Goodrich understood that the relation was a contract relation, since otherwise no charge would be made for support on the one hand or services on the other. It is true that Goodrich kept an account of expenditures for Whiteside before he came of age, in the form of charges on the journal, but there were no credits during that time and it was probably intended as a sort of expense account. After Whiteside became of age he credited him with services. It was also proved that Goodrich told one of the executors, who was an attorney and drew his will, that the legacy given to Whiteside was not enough; that he wanted to convey to him a house and lot and fifteen acres of land, which he valued at $3500, as compensation to him, alone, for his services, and then put him on a basis with the other nephews and nieces in the will by the specific legacy. He furnished a description of the property to be conveyed and the deed was made. When it was brought to the house to be executed Goodrich was not in a fit condition to execute it, and the attorney was told that the papers had been fixed and the deed had been made. The deed intended was in some way confused with another deed. The conveyance was not made, but the evidence tended to show that Goodrich understood that

Whiteside was to be compensated. It is said that this testimony of the attorney was incompetent, and that the court erred in admitting it, because the communication was confidential. The abstract does not show any ruling on that subject. The only objection made was, that the witness was one of the executors and was there to bolster up his own case. That objection was overruled, and there is no suggestion in this court that it was a ground for excluding his testimony.

The argument that Whiteside was guilty of fraud in presenting a groundless, trumped-up claim is not sustained by the evidence, nor is there anything tending to show that he was in collusion with the executors in any way in the allowance of the claim.

It is also charged that the executors were in collusion with the claimant and fraudulently assisted him to secure an unjust allowance. The principal ground of this charge seems to be that Goodrich's books containing his charges and credits in the account of Whiteside were in the hands of the executors and were not introduced in evidence on the hearing of the claim. There was a rule on Whiteside to file a bill of particulars of his claim, and he went to the journal of Goodrich and took from it the charges against him and filed the bill of particulars, giving the estate credit for them, amounting in all to about $1400. So far as the charges against Whiteside are concerned, the estate suffered no injury by the books not being produced, for the reason that he gave the estate credit for them himself. Whether they could have been proved by the books is immaterial, because he conceded them and the estate had full benefit of them. So far as the credits on the ledger to Whiteside crediting him with certain specific sums for his services are concerned, there is no evidence tending to show that he knew anything about them or was in any way connected with making them. The account was not kept in the course of any business, and would not have been admissible in evidence

for the purpose of proving how much he was to receive if it had been produced. It is insisted, however, that he became bound by the amounts credited to him in the ledger for his services because he copied from the journal the credits which he gave the estate. The only use he made of the account was for the benefit of the estate, by giving credits to it. He took no item from the book as a charge against the estate, and made no attempt to use a part of any credit to him and ignore the balance of the same account. The rule that one cannot take the benefit of a part of an account and ignore and repudiate the balance cannot be applied, because he took no advantage from the account and merely credited the estate with whatever he was charged with. Even on the theory that the credits given him were conclusive against him, he was not guilty of fraud in not introducing evidence for the defense. (*Ward* v. *Durham, supra.*) He was not proved guilty of any fraud, nor were the executors proved guilty of assisting him in fraud in not producing the books.

There are many complaints against the conduct of the executors in relation to other matters which, it is claimed, have some bearing on the charges made in this case. The complaints are such as occasionally arise in the administration of estates, such as failing to notify appellants who lived in other States when the personal chattels would be sold, so that they could purchase some of their grandparents' relics; opposing the devisees in a partition suit and delaying the suit, and other like matters. These complaints are about matters in no way connected with Whiteside's claim, and appellants were not entitled to make proof of them. For the delinquencies of the executors, if there are any, with which Whiteside is not concerned, the remedy is on their bond.

Appellants failed to prove the charges of their petition, and the court was right in dismissing it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*