## Anna Morton, Appellee, v. Fora Robinson, Adm'r etc., Appellant.

1. CONTRACTS—*when services presumed gratuitous.* Services ren-
dered by one relative to another are in the first instance presumed to
have been gratuitous.

2. NEGOTIABLE INSTRUMENTS—*when purported consideration over-
come.* A consideration which a note purports is overcome by showing
that the services rendered by the payee who was a relative of the maker
were such that there could be no liability in the absence of an express
or implied promise to pay therefor, and upon such a showing the burden
of proof shifts to show that there was a liability independently of the
note.

Appeal from the Circuit Court of Marion county; the HON. THOMAS
M. JETT, Judge, presiding.   Heard in this court at the October term,
1911.   Reversed and remanded with directions.   Opinion filed April
12, 1912.

KAGY & VANDERVORT and ALBERT & MATHENY, for
appellant.

NOLEMAN & SMITH and CHARLES H. HOLT, for ap-
pellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

The Circuit Court of Marion county on appeal from the Probate Court, allowed a claim in favor of appellee against the estate of J. S. Morton, deceased, for the sum of $12,854.32, and rendered a judgment that the same be paid as a claim of the seventh class. The administrator has appealed to this court. The claim was allowed on a note which reads as follows:

"$10,000.00             Vernon, Illinois, Jan. 3, 1907.

One year after date, we, or either of us, promise to pay to the order of ANNA MORTON, Ten Thousand....
......1-00 Dollars for value received, with interest at the rate of seven per cent. per annum, payable annually from date.

In case default is made in the payment of this note, or the interest thereon, according to tenor and effect thereof, the whole amount shall become due, and if suit is brought on this note, then an attorney's fee of ten dollars, when said payment is one hundred dollars or less, or of ten per cent. on the whole of said amount, when the said amount exceeds one hundred dollars shall be taxed as a part of the costs in the court where said suit may be brought.

Signed         J. S. MORTON.    (L. S.)

This, I consider is her part for the help she has given me during twenty years of assistance.

· J. S. MORTON."

The maker of the note, J. S. Morton, died May 18, 1910, and appellant qualified as the administrator of his estate. The main contention of appellant is that the finding and judgment was contrary to the law and the evidence, and also that the court erred in including an attorney's fee of $1,239.

The execution of the note by the deceased is not disputed, but it is insisted the evidence in the case shows that the note was executed without any consideration to support it; that it was a gift and to be paid after

the death of the maker, and was intended as a testamentary gift and not enforcible. If there was any consideration for the note, it was for services.

There was no conflict in the evidence. Anna Morton, the payee in the note, was the sister of the intestate, J. S. Morton. At the time of the date of the note Anna was about thirty-four years of age. The age of J. S. does not appear but he was a bachelor until December, 1907, when he married, and at the time of his death in May, 1910, left his widow surviving him. He was a physician and had been practicing medicine a number of years. The father of Anna and J. S. was also a physician and lived at Vernon many years. He died there in 1906. His first wife, the mother of Anna and J. S., died many years ago and the father remarried in 1877 and had by his second wife two children, one of whom, a daughter Daisy, still survives. The second wife separated and went away from the father in 1901, and she and the daughter afterwards lived away. There were two other children by the first wife: Lyda, who married one Binnion and left the family home in 1891, and Bryant who left soon after. During all their lives and up to the execution of the note, Anna and J. S. lived in the family home of the father in no different relation from the ordinary family living together, the father, stepmother, stepsister, Anna and J. S. living as members of one family usually live, each doing his or her part in the family relation. For a number of years before his death, the father was afflicted with rheumatism and chronic diarrhea and the stepmother while she lived there and Anna cared for, and waited upon him. After his death Anna and J. S. were the remnant of the family, and they continued in the same relation to reside there. Anna looked after and cared for the household and answered the telephone calls for J. S., looked after his office, and no doubt was greatly interested in him and in his professional labors. She did all she could to promote his welfare and happiness,

and the evidence shows that J. S. was appreciative of her kindness, and sincerely attached to her. Anna did not live there at any time in any capacity except that of a kind and affectionate daughter and sister in the family in which she did her part well. No inference can be drawn from the testimony of this family relationship alone, that tends to show any contract either expressed or implied between Anna and her brother to pay Anna for services. The presumption of law arising out of such relationship is that the services are gratuitous and rendered because of the relation. Scully v. Scully, 28 Iowa, 548; Ayres v. Hull, 5 Kan. 251; Sherman v. Whiteside, 190 Ill. 576; Chapman v. Chapman, 87 Ill. App. 427.

In this case the note itself imports or presumes a consideration and the burden of proof was cast on appellant to overcome this presumption. This was done when it was shown the consideration if any was for alleged services, and that the relationship was such that there could be no liability for such services in the absence of an express or implied agreement to pay for them. This showing was sufficient to meet the *prima facie* case made by the note, and to entitle appellant to judgment if no more evidence had been heard, and the burden shifted to appellee to prove there was such agreement to pay for services.

"The question as to the *onus* of proof is only a rule for deciding on whom the obligation rests of going further if he wishes to win." Jones on Ev., par. 174; see also Am. & Eng. Ency. of Law, 2nd ed., vol. 5, p. 22, entitled "Burden of Proof."

There was no evidence of any express agreement to pay appellee for services, and it was incumbent on her to prove facts from which an inference of such an agreement arose, and such facts must be sufficient to justify the conclusion that the parties were dealing on the footing of a contract, and that both parties expected the services to be paid for. Sherman v. Whiteside,

*supra;* Switzer v. Kee, 146 Ill. 577. We have already said no promise could be implied in this case from the relationship. The relation of the parties excludes the inference they were dealing with each other on the footing of contract, and in such case the evidence must show that when the services were rendered both parties expected them to be paid for. Byers, Jr. v. Thompson, 66 Ill. 421; Heffron v. Brown, 155 id. 322. "The implied contract may be proven by facts and circumstances which show that both parties at the time the services were performed contemplated or intended pecuniary recompense other than such as naturally arises out of the relation." Neish v. Gannon, 198 Ill. 219; Sherman v. Whiteside, *supra.*

It is earnestly contended by appellee that an express contract is established by the note, and that the evidence overcomes the presumption that the services of appellee were rendered gratuitously, and show an implied contract entitling her to recompense even without the note. As already said there is no evidence of an express contract and we think the recital in the note tends rather to show there was not, and it remains to determine whether all the facts show that at the time the services were rendered both parties contemplated or intended they should be paid for.

The note itself is for a very large sum and out of all proportion to the value of appellee's services. At the time it was given it represented in amount a greater part of all her brother's property. The amount of the note being in round numbers ten thousand dollars and so out of proportion to the services, it is a strong circumstance the parties were not dealing, and had not dealt on the footing of a contract. We think the other circumstances in evidence in addition to this, not only do not establish that at the time the services were rendered both parties expected them to be paid for, but that they tend strongly to show the contrary, and that the execution and delivery of the note was a voluntary

gift without any such expectation, and intended to operate as a testamentary disposition and cannot be enforced. Blanchard v. Williamson, 70 Ill. 647. The note was made about a year before the brother's marriage and so far as the evidence shows before he anticipated that event. He expressed himself as having no confidence in disposing of property by devise, and talked of the ease with which wills were broken, and set at naught, and that he wanted to take care of Anna, and dispose of his property in a way that it would pass in law, and that he thought a note and mortgage would be a better way than a will. He expressed hostility to some of his relatives who would inherit from him, and that he expected to fix things so that when he died they would not get a dollar of his estate. On Monday before his death when told he should do something for Anna he said he had done that long ago. Anna was his favorite, he wanted to provide for her as he had told his father he would when his father asked him to provide for her during his life and after his death. The recital in the note is that it is given as "her part" for her help and assistance. In connection with this recital the evidence shows that the note was secretly kept until the brother's marriage when Anna gave it to her sister where it was secretly kept until his death. No interest was ever paid or any part of the principal though long past due. Anna herself said of it after her brother's death that she looked upon the note as a token of her brother's appreciation of her more than anything else. We think the recital in the note is a strong circumstance that in view of all she had done for him that the note was her part of his estate, and in view of all the evidence which we have carefully considered we can reach no other conclusion than that when the services were rendered the parties did not expect them to be paid for; that Anna had no legal claim against her brother for services, and that the

note was a mere gift without a legal consideration to support it. We have also considered the authorities cited by counsel for appellee, but we are of opinion the authorities cited in this opinion are in harmony with the conclusions reached by us.

The finding of the Circuit Court was against the evidence and the judgment is reversed and the cause remanded with directions to enter an order disallowing appellee's claim and to certify the cause and order back to the Probate Court with like directions.

It is not necessary to pass upon the error assigned upon the allowance of attorney's fees.

*Reversed and remanded with directions.*