### In re BRADBURY.

(Supreme Court, Appellate Division, Third Department. May 3, 1905.)

1. DECEDENT'S ESTATE—CLAIM ON NOTE.
    Evidence on the hearing of a claim against a decedent's estate on a note examined, and *held* to warrant findings that the note was executed and delivered by the decedent for a sufficient consideration.

2. SAME—DEPOSITION—HARMLESS ERROR.
    On the hearing of a claim against a decedent's estate, any error in permitting a deposition to be read in support thereof was not cause for reversal under Code Civ. Proc. § 2586, giving the appellate court the same power to decide questions of fact that the surrogate has, where the evidence without the deposition was sufficient to sustain the claim.

3. SAME—CONSIDERATION—SUFFICIENCY.
    The performance of services and furnishing board and valuable things, not as a gratuity, but in expectation of being compensated therefor, is a sufficient consideration to sustain a note for an amount in excess of the real value of the services performed or things furnished.
    [Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, § 190.]

4. SAME—TESTIMONY OF CLAIMANT AS TO LETTERS FROM DECEDENT.
    On the hearing of a claim against a decedent's estate on a note, where claimant was permitted to answer questions as to letters of decedent to claimant, and the letters were admitted in evidence, but were received only for the purpose of comparison of the letters and signatures to refute a claim that the decedent's signature to the note was not genuine, and the handwriting of those actually used was shown to be that of decedent, any error in the ruling was harmless.

Appeal from Surrogate's Court, Chemung County.

In the matter of the final settlement of the account of Levi Bradbury, as executor of the last will of Jerusha M. Sherman, deceased. Five of seven residuary legatees named in the will of Jerusha M.

Sherman, deceased, appeal from that part of the decree of the surrogate settling the final account of the executor of said will, dated July 26, 1904, and entered in the office of the surrogate of said county July 27, 1904, wherein it directs the allowance and payment to Wesley C. Rowley of the sum of $4,336.75, the amount of a claim presented by him against the estate of said decedent, and also from the decree of said court, dated July 12, 1904, adjudicating the validity of said claim. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

W. E. Knapp (Gibson & Stagg and J. A. Gibson, of counsel), for appellants.

H. H. Rockwell, for respondent Wesley C. Rowley.

CHASE, J. The respondent, on the 9th day of June, 1903, duly presented to said executor a claim against the estate of the deceased, consisting of a promissory note, with interest thereon from its date, of which note the following is a copy:

"$4150.00　　　　　　　　　　　　　Webb Mills, Nov. 16th, 1899.
"On demand I promise to pay to the order of W. C. Rowley four thousand one hundred fifty dollars. Value received. Interest one per cent.
　　　　　　　　　　　　　"[Signed]　　　J. M. Sherman."

On June 11, 1903, the executor rejected said claim, and thereafter a written consent was duly filed by the claimant and said executor that said claim be heard and determined by the surrogate of Chemung county upon the judicial settlement of the account of said executor. On said judicial settlement of the executor's account the claim was contested by the executor and by the appellants as residuary legatees on the grounds: (1) That the decedent never signed and delivered said note; (2) that, if said note was ever signed and delivered, there was no consideration therefor. The executor was sworn, and testified that Rowley told him that he received the note from his aunt (decedent) by mail in a letter or envelope, directed to his address in New York, and that his aunt had promised him that he should have certain moneys that were collected from a note which she held against the estate of her first husband; that she required the interest on it while she lived, and after that he was to have it for his kindness in helping her. The decedent was for many years the wife of one Tobey. Tobey, on the 1st day of January, 1887, gave to his wife, the decedent, his note for $4,000, with interest at 1 per cent. He died March 11, 1894, leaving a will, in and by which he appointed decedent and one Levi Bradbury executrix and executor thereof. Decedent did not leave any children. The claimant was her nephew, and a favorite with her. She remained part of the two winters following Mr. Tobey's death at the home of the claimant, who was then keeping house with his mother, a sister of decedent. More than six years had expired after the note which she held against her husband was given, when he died. Decedent presented a claim on the note to her coexecutor. It was necessary for

her to prove her claim in the Surrogate's Court. The respondent claims that the decedent believed that the note was uncollectible. Payments had been indorsed on the note by her, and the proof and allowance of such payments were necessary to prevent the statute of limitations from running against her claim on the note. Claimant herein did some work and performed some services for decedent in connection with proving the debt in the Surrogate's Court and having the same allowed as a claim to her. The amount was $4,194.85, and the same was paid to her September 19, 1895. About two years after the death of her first husband decedent married one Sherman. Sherman died in 1897, and decedent died on the 2d day of March, 1902. She left a will, by which she made said Levi Bradbury executor, but the claimant was not mentioned therein. There was a contest over her will, but it was admitted to probate. At the time when the note in question bears date claimant was employed in New York by a photographer. An employé of said photographer testified that in the fall of 1899 he received the mail from the carrier at said photographer's, and that he remembers receiving a letter for the claimant, and taking it to him, and that he saw claimant open the letter and take out a note, which he handed to him (witness), and he read it, and remembered that it was a note for $4,150; and he also remembered the name that was signed to it. One witness—an old neighbor of the decedent—testified that a few days before Thanksgiving in 1899 she was at the home of the decedent, and her testimony as to what the decedent said to her is as follows:

"Well, then she talked about her money—what she was going to do with it, and what she had done with it. She said, 'I have just sent Mr. Rowley my note for that amount of money' that he collected for her, of a note that Mr. Tobey had given her years before, and she had sent it to him as a debt she owed him for services rendered her in collecting—helping collect—this note, and for two winters that she lived with him here in the city after her husband died, when her first husband, Mr. Tobey, died, and for services she said that was rendered her; and she spoke that she intended to leave Mr. Rowley the bulk of her property and as he— 'I have always thought of him as son of my own,' that is the substance of the conversation."

Decedent's brother testified that decedent told him in the fall of 1897 that she had but little property to give to anybody, and she further said, "The heft of her property Wesley C. Rowley will be entitled to, as I intend to give him the heft of my property;" and he testified that in a further conversation which he had with her in January, 1902, a few weeks before her death, she said to him that Rowley had assisted her in collecting a note of $4,000, and she felt as though she wanted to make him good, and therefore she had sent him a note for that amount.

The executor testified that the decedent repeatedly said to him that the parties named in her will would be greatly disappointed, as they would not receive much, because she had made other arrangements with her money. Decedent made a will prior to the date of the note to Rowley, in which she made a substantial bequest to Rowley; but after the date of the note she made two wills, in neither of which was Rowley mentioned. The executor

of her will testified that in making one of these later wills she asked him to figure up the amount that would be left after paying certain legacies mentioned in that will; that he did so, and said to her that there would be quite a large amount to be divided among the residuary legatees; and decedent replied that there would be but very little, if anything, because she had made other arrangements in regard to her money; that she further said that there was a big debt that he knew nothing about.

On the trial the executor and appellants called a witness who had seen the decedent write, who testified that in his opinion the signature to the note in question was not the signature of the decedent; and they also called two professional experts in handwriting, and each testified that in his opinion the signature to the note in question was not the signature of the decedent. The claimant called a professional expert in writing and two bank officers residing in Chemung county, who had for years been accustomed to examine signatures, to determine in regard to their genuineness, and he also called one of the residuary legatees and the executor of the will, both of whom had for years been familiar with decedent's writing, and each testified that in his opinion the signature to said note was the signature of the decedent. It is insisted by the appellants and by the claimant that the surrounding circumstances tend to show the correctness of their claims, respectively.

We have carefully examined the record and the original exhibits before us, and we conclude, without here stating the facts with more detail, that the findings of the surrogate that the note was executed and delivered by the decedent, and that there was a sufficient consideration therefor, are sustained by the evidence. On the 9th day of December, 1903, the attorneys for the claimant and the executor, respectively, entered into a stipulation that an order be entered directing that a commission issue to examine under oath claimant's mother, as a witness, in Kansas, in the matter of the claim of Rowley. The order was entered and the commission issued and was executed. The deposition was returned and filed in the Surrogate's Court of the county of Chemung on the 15th day of December, 1903. On January 12, 1904, the executor petitioned for an accounting, and a citation was issued returnable February 1st. A special guardian was appointed for an infant residuary legatee, and by consent the further hearing in the proceeding was postponed until March 1, 1904. The person named as special guardian of the infant residuary legatee is an attorney at law, and he was employed generally by the residuary legatees who are the appellants herein in September, 1903, and he was consulted by the attorneys for the executor at the time when the stipulation for the order directing that a commission issue was signed and the order and the interrogatories to be attached to the commission were submitted to him before they were finally completed. No motion has ever been made to suppress the deposition. When the deposition was about to be read in evidence, the special guardian objected thereto on various grounds, including an objection that the court had no jurisdiction to issue the commission.

The court overruled the objections on the ground that, as there had been sufficient time therefor, any objection thereto should have been taken by motion to suppress the deposition. If we assume that the deposition should not have been read in evidence, we are nevertheless of the opinion that, as this court has the same power to decide the questions of fact that the surrogate had (Code Civ. Proc. § 2586), and we think that the findings should be affirmed on the evidence apart from the deposition, the error, if any, should not reverse the judgment.

Apart from the opinion of three witnesses that the signature to the note is not the signature of the decedent, there is but very slight evidence in contradiction of claimant's witnesses. The testimony of claimant's witnesses, including the testimony of the executor, but not including the opinion evidence as to decedent's signature, shows that decedent not only assumed and admitted that she had signed and delivered the note to the claimant, but that she recognized a legal obligation to compensate claimant for services rendered.

While mere gratuitous services are an insufficient consideration for an executory agreement or promise, the performance of services and furnishing of board and valuable things, not as a gratuity, but in expectation of being compensated therefor, is sufficient to sustain a promissory note for an amount in excess of the real value of the services performed or things furnished. In the absence of fraud, an existing legal obligation will sustain a promise to pay an amount far in excess of its real value. See Gallagher v. Brewster, 153 N. Y. 364, 47 N. E. 450; Cowee v. Cornell, 75 N. Y. 98, 31 Am. Rep. 428; Earl v. Peck, 64 N. Y. 597; Worth v. Case, 42 N. Y. 362; Yarwood v. T. & G. Co., 94 App. Div. 47, 87 N. Y. Supp. 947; Bush v. Whitaker, 45 Misc. Rep. 75, 91 N. Y. Supp. 616. The testimony shows that decedent meant what she said in the note by the words "value received." That statement, under the circumstances described, is a recognition of a valid legal obligation against her.

The appellants contend that the surrogate erred in allowing the claimant to answer questions as to his receiving certain letters by mail which it is claimed were in the handwriting of the decedent. Claimant desired to use the letters and the signatures thereto as standards of comparison. Those admitted in evidence were only received for that purpose, and the handwriting of those actually used was shown and admitted by the executor to be that of the decedent. If there was any error in the ruling of the surrogate in allowing the claimant to answer the questions asked of him relating to his having received the letters by mail, it was entirely immaterial and harmless.

We have examined the other objections raised by the appellants, but do not think that they are of sufficient importance to reverse the decree.

The decrees should be affirmed, with costs. All concur.