Geo. B. Mills et ux., Appellants, vs. Lawrence Joiner, Appellee.

1. It is error to receive in evidence the statement of a party made in his own behalf to a third person, without in any way connecting the other party therewith, as it furnishes no legal proof of the facts claimed to exist, by reason of such evidence. Especially is it error when such evidence has a tendency to mislead the minds of the jury in coming to a correct conclusion.

2. It is a well established principle that hearsay evidence "is held incompetent to establish any specific fact, which in its nature is susceptible of being proved by witnesses who can speak from their own knowledge."

3. It is a presumption of law, that the father is not bound to pay a child, though of full age, for services while living with him at home, and as one of the family, but this presumption may be overcome by proof of a special contract, or an express or implied promise or understanding ; and such implied promise or understanding may be inferred from the facts and circumstances shown in the evidence.

4. The plaintiff, a female of full age, agreed to work for her father, as she testifies, during his life, or until she was discharged·; that the father agreed to convey her a certain piece of land as compensation for her services. The agreement was not in writing ; she so worked for her father for twelve years ; he then discharged her, and conveyed the land to a third person. She brings an action at law for her services. The court instructed the jury in substance that the plaintiff could only recover the land, or the value of it, and if there was no evidence of the value of the land, the verdict should be for the defendant : *Held*, to be error. The agreement not being in writing, and being for the conveyance of land, she could not maintain an action for specific performance, but could upon a *quantum meruit*.

Appeal from the Circuit Court for Gadsden county.

The facts of the case are stated in the opinion.

*John W. Malone* for Appellants.

The first error assigned involves a consideration of the testimony of Wm. H. Scott, who testified in substance as follows: I know the plaintiffs and defendant in this suit; I have been engaged in merchandizing for a number of years. The defendant has on several occasions purchased of me dry goods and paid for them. On several occasions the defendant has requested me to select a dress for him, saying, " that he wanted it for his daughter, Mrs. Mills, and I did so. I think the defendant would purchase of me as much as $35 or $50 worth of goods a year, but this is guess work on my part." The testimony was inadmissible because it was irrelevant to the issue joined, and because it was re--

ceiving an *ex-parte* statement made by the defendant to the witness as evidence for the defendant. 1 Greenleaf's Ev., 13th Ed., 50 and 171.

Yet it was of a nature well adapted to make an impression on the minds of the jury beneficial to the defendant and prejudicial to the plaintiff's case. The admission of testimony of such a nature affords good ground for setting aside a verdict. 10 John. Rep. 128 ; 13 Ibid, 350 ; 15 Ibid, 239 ; 16 Ibid, 89 ; 3 Cowen, 612 ; 8 Barb., 630 ; 17 Texas, 558 ; 16 Fla. 76 ; 4 Adolp. & Ellis, 53 ; 7 Ibid, 313 ; 6 Nev. & Man., 132 ; 1 Stroble, 135 ; 10 B. Mon., 316 ; 10 New Hamp., 269; 3 Little, 77.

The second error assigned involves a consideration of all the evidence in the case as well as a portion of the Judge's charge.

We submit that the manifest weight of the evidence is so much against the verdict as to bring this case within the rule laid down by this court in the case of Wilson vs. Dibble, 14 Fla., 47.

The charge of the court, or such parts thereof as was excepted to, will now be examined and discussed in their order.

The first exception was to so much of the charge as read as follows : " But when a daughter remains with her father and renders services to him without a special contract or express promise that she is to be paid for them, then the law presumes that such services were rendered from motives of filial affection, and gives the daughter under such circumstances no right to recover for such services."

This instruction was evidently too limited, and not applicable to the case at bar. It confined the jury in their inquiry to a special contract or express promise and precluded them from inquiring into and considering such circumstances connected with their dealings together as

would fairly warrant the inference that it was the under-
standing and expectation of the parties on both sides, that
the services were to be paid for. The jury were virtually
told in the above instruction that a special contract or ex-
press promise must be proven, otherwise the plaintiffs could
under no circumstances recover ; that a contract could not
be presumed from the circumstances of the plaintiffs' and
defendant's dealings together ; and that in the absence of a
special contract or express promise, they must presume that
the services were rendered from motives of filial affection.
This instruction does not accord with the established rule
applicable to the dealings between parent and child. 33 New
Hamp., 581 ; 37 Ibid, 133 ; 6 Indiana, 60 ; 16 Illinois, 296 ;
5 Wisconsin, 472.

The circumstances connected with the dealings together
between the plaintiffs and defendant, we think, fairly war-
rant the inference that it was the understanding and expec-
tation of the parties on both sides, that Mrs. Mills was to
be paid for her services by the defendant.

The second exception was to so much of the charge as
read as follows : " If you believe from the evidence that
even if the daughter had served her father all his life, she
would in that event have had a right to recover only the
value of the land, or the land itself, then the plaintiffs can-
not recover in this action more than the value of the land.
What the value of the land is may be a question for you
to determine from the evidence if you find that there is
any evidence on that subject. If you find that there is no
evidence as to the value of the land your verdict should be
for the defendant."

The plaintiffs could not enforce a specific performance of
their contract with the defendant and compel a conveyance
of the land because the contract was verbal only and in
contravention of the statute of frauds, nor could they sue

upon the special contract and recover the value of the land, for the same reason. 19 Fla., 366.

The cases in which a person can recover the value of the land for a refusal to convey the same in persuance of an agreement to do so, are those where there is a valid and legal agreement to convey, and the defendant in the breach of said agreement is guilty of some fraud.

The case at bar is not one of these cases. The express contract proven by the plaintiffs was verbal and in contravention of the statute of frauds; hence they must recover on the common counts the value of the services rendered. 21 Eng. Com. Law Rep., 479; 5 Wendell, 204; 19 Fla., 365; In re Dickenson Estate, S. C. Mich., January, 1883; 14 N. W. R., 691.

The above instructions we insist were erroneous and amounted to such a misdirection as was calculated to mislead the jury. Under such circumstances the court will grant a new trial although there may be sufficient evidence to sustain the verdict. 3 Wendell, 418; 5 Mass., 365 and 438; 5 Barn. & Cress., 501.

*E. C. Love* and *P. B. Stockton* for Appellees.

The first exception taken by the plaintiffs was as to the admissibility of the testimony of W. H. Scott, a witness for the defendant. The defendant insists that the testimony of said Scott was relevant and legal, rebutting as it does the idea that any express contract existed between the defendant and Mrs. Mills, and corroborating the testimony of the defendant who swore that no contract for hire or compensation for services of his said daughter ever existed between them, and indicating that so far from defendant treating his daughter as a hired servant or employee, he regarded her as his daughter and was maintain-

ing her as such. If the testimony was immaterial and not calculated to mislead the minds of the jury in arriving at a correct conclusion, the court will not reverse the judgment for the reason that it was admitted. See Nickels & Gautier vs. Mooring, 16 Fla., 76 ; Simpson & Co. vs. Daniels, 16 Fla., 677.

The second error complained of by plaintiffs is the refusal of the Circuit Court to grant a new trial of the case. The first ground mentioned in the motion for a new trial is : ·

I. That the verdict is manifestly against the weight of evidence, and

II. That the verdict is not supported by the evidence.

We insist that both these grounds were properly overruled, for the reason that the testimony of Lawrence Joiner, the defendant, fully sustains and authorizes the verdict.

In all cases of conflict of testimony the jury is the sole judge of the credibility of witnesses and have the right to reject what they do not believe. A verdict will not be set aside as against the weight of evidence when such evidence seems to preponderate against their finding. McMurray & Brittain vs. Bassnet, 17 Fla., 609 ; Nickels & Gautier vs. Mooring, 16 Fla., 76; John D. C. vs. The State ex rel., 16 Fla., 554; Wilson & Wilson vs. Dibble, 14 Fla., 47 ; Sherman vs. The State, 17 Fla., 888.

A verdict is not against evidence where there is legal evidence to support it, though there be a conflict on a material point. Huling vs. Fla. Savings Bank, 19 Fla., 695.

The third ground mentioned in the motion for a new trial is the charge of the court to the jury in reference to the services of an adult child living with a parent without a special contract or express promise to compensate the child for services performed. We insist that this ground was

properly overruled and that the charge of the court was correct, embodying the law in such cases. See Andrews vs. Foster, 17 Vermont, 553; Fitch vs. Peckham, 16 Vermont, 150.

Where a daughter continues to reside in her father's family after her age of majority the same as before, the law implies no obligation on the part of the father to pay for the services. Andrews vs. Foster, 17 Vermont, 556. Also see Fitch vs. Peckham, 16 Vermont, 150.

The doctrine contained in above cases is still further illustrated in the case of Daubenspect Ex'r vs. Powers, 32 Ind., p. 42.

If it is shown that the services were rendered voluntarily no payment for them can be recovered, however great the benefit conferred, nor will the hope of a bequest or gift from the party served change this result, or should the parties be father or son or near relatives the presumption of a contract to pay for the services on the one hand and for board on the other will not ordinarily arise. See Bishop on Contracts, p. 77, and cases cited.

The 4th ground of motion for a new trial is an exception to the charge of the court in relation to the measure of damages. We insist that this ground was properly overruled and that the charge of the court is substantially correct. Mrs. Mills, the plaintiff, does not testify as to any specific amount her father was to pay for her services, but that her father was to fully compensate her for her services by giving her a certain designated piece of land. That was to be the measure of compensation, the stipulated reward for all her services, whether it was little or much, and she must fix the value of her·services by proving the value of the land. There can be no other just measure by which her services can be computed, for it is evident from her testimony that she did not render her alleged services for any

stipulated sum of money, for according to her own testimony her father's pecuniary circumstances were not such as to justify him in paying or her in the expectation of receiving a pecuniary compensation for any services she might perform. To compute the value of her services at the rate of $5 per month for a period of 13 years might do great injustice to the defendant and give to the plaintiffs a remuneration for services far in excess of that fixed by the contract or agreement. The value of the land should have been proven at the trial as a guide to the jury in fixing the value of her services and in arriving at the amount of damages she sustained by reason of the failure of the defendant to comply with his allege l promise in case the jury found for the plaintiffs.

There is no evidence in this case that the defendant acted or intended to act in bad faith, but the fact that the plaintiffs had the use of defendant's land and premises free of rent and neglected and refused to furnish the defendant in his old age with the necessaries of life, forced him, the defendant, to sell the land and there'y place himself in a condition not to be able to allow his will to stand as he made it in 1878. Sedgwick on Meas. Dams., pp. 216, 224, 225 and 239 ; Hopkins vs. Lee, 6 Wheat., 109, 118 ; Jewet vs. The Lawrenceburg R. R. Co., 10 Ind., 539 ; Devin vs. Himer, 29 Iowa, 297.

It is evident in this case that the jury did not believe from the testimony that there was any special contract or special promise to pay for plantiff's services. In the matter of an erroneous charge where the verdict accords with the law and facts, see Mays' Ex'rs & Ex'x vs. Seymour, 17 Fla., p. 725.

As to the 5th ground in motion for new trial, " That said verdict is contrary to the law of the case," we insist

that said ground was, in view of the authorities heretofore cited, properly overruled.

The defendant insists that in this case, the plaintiff being the daughter of the defendant, where no contract or obligation to pay for services is presumed, the plaintiff should set out in his declaration a special contract or express promise, and where he neglects to declare on a special contract he cannot recover on a common count, there being nothing presumed in her favor, and if the special contract is void under the statute of frauds then the plaintiffs cannot recover at all.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

The plaintiffs, Henrietta Mills and George B. Mills, her husband, brought their action in Gadsden County Circuit Court against Lawrence Joiner, who was the father of Henrietta Mills, claiming to recover the sum of fifteen hundred dollars for the price and value of work done by said Henrietta for the defendant, at his request. The defendant denied the indebtedness, and issue was duly joined. The issue thus joined was tried at a term of the Circuit Court held in Gadsden county in November, A. D. 1883, and the jury found for the defendant, whereupon a judgment was entered against the plaintiffs. The plaintiffs moved for a new trial for the reasons as follows:

1. The verdict is against the weight of evidence.

2. The verdict is not supported by the evidence.

3. The court instructed the jury as follows: " But when a daughter remains with her father and renders services to him without a special contract or express promise that she is to be paid for them, the law presumes that such services were rendered from motives of filial affection, and gives the

daughter, under such circumstances, no right to recover for such services." Which charge was excepted to by plaintiffs' attorney.

4. The court further instructed the jury: "If you believe from the evidence, that even if the daughter had served her father all his life she would in that event have had a right to recover only the value of the land, or the land itself, then the plaintiffs cannot recover in this action more than the value of the land. What the value of the land is may be a question for you to determine from the evidence, if you find that there is any evidence on that subject. If you find that there is no evidence as to the value of the land, your verdict should be for the defendant," which charge was excepted to by plaintiffs' attorney.

5. That the verdict is contrary to the law of the case.

The motion for new trial was denied, and the plaintiffs bring their appeal.

The errors here assigned are:

First. The admission of the evidence of Wm. H. Scott in behalf of the defendant.

Second. The overruling of the plaintiffs' motion for a new trial, and the refusal to grant the same.

The evidence on the part of plaintiffs showed that Henrietta Mills was the daughter of the defendant, Joiner. That in January, 1870, she, then being over twenty-one years of age and unmarried, told her father and mother that she intended leaving them and seeking employment elsewhere. That her mother was then in bad health and her father very poor, and burdened with debt. That both her father and mother requested her to remain at home, and her father promised to pay her for her services if she would remain and take care of and wait on him and her mother. That in consideration of such promise of payment, she did remain and attend to the household mat-

ters. She so remained for twelve years. No price was mentioned to be paid for her services. The mother died in 1873. That soon thereafter her father told her if she would continue to serve him as before during his lifetime, or until he should sooner discharge her, he would give her in payment for her services a piece of land containing about one hundred acres, pointing out to her the boundaries of such land. There was no written agreement. but only a verbal one. During the period of her services she did the cooking and washing for the family; all of the house work, attended to the dairy and poultry, milked and took care of the cows, wove cloth and made the clothing for the family; she made most enough from the dairy and poultry to support the family, and the money realized from the crops was used by the defendant in paying off his debts. In 1878 she told defendant she wished to marry Mr. Mills. He did not object, but said she must continue to reside with and serve him just as she had previously done, otherwise she would forfeit the contract. She married Mills in October, 1878, but continued to reside with and serve her father just as she had previously done. They all lived very happily together until January, 1883, when defendant dismissed her, and told her he had conveyed the land to her brother and his son to prevent her from getting anything for her services. She is now poor, an invalid, with no home and no place to shelter her if compelled to leave her present place of residence, which is on the land. Her services were worth at least five dollars per month.

The brother of Mrs. Mills testified that it was understood in defendant's family that he was to give the one hundred acres to Mrs. Mills, in payment for her services. That in 1879 defendant told him so himself. That Mrs. Mills, since 1870, had done the cooking, washing, all the house work, attended to the dairy and poultry, milked the

cows, wove cloth and made the clothes for the family. The defendant testified that he never made any contract or agreement with Mrs. Mills to compensate her for services. That he never agreed to give her in payment for her services the piece of land designated; says he told her he had made his will in 1878, and in that he gave her the land. He never regarded her as a hired servant, and always treated her as a daughter. That he was compelled to sell the land to get a support for himself. That he sold it to his son, Thomas Joiner. After he sold the land he destroyed the will. He could not get along with Mills. He told him to leave the place last January, but did not order his daughter away. Has not permitted his daughter to serve him since he told Mills he must leave.

The defendant then offered Wm. H. Scott as a witness, who testified as follows: " I know the plaintiffs and defendant in this suit. I have been engaged in merchandising for a number of years. The defendant has on several occasions purchased of me dry goods, and paid for them. On several occasions the defendant has requested me to select a dress for him, saying that he wanted it for his daughter, Mrs. Mills, and I did so. I think the defendant would purchase of me as much as thirty-five or fifty dollars worth of goods a year, but this is guess work on my part."

The evidence of Scott was objected to by attorney for plaintiffs; the objection was overruled by the court, and this is the ground of the first assigned error.

The counsel for the appellee in this case, (defendant below,) in his argument says that the testimony " was relevant and legal, rebutting as it does the idea that any express contract existed between the defendant and Mrs. Mills, and corroborating the testimony of the defendant, who swore that no contract for hire or compensation

for services of his said daughter ever existed between them, and indicating that so far from defendant's treating his said daughter as a hired servant or employee, he regarded her as his daughter, and was maintaining her as such." The defendant was a house-keeper, Scott was a merchant, the defendant purchased of Scott from thirty-five to fifty dollars worth of goods a year, as Scott guesses. This evidently is not a large sum for a family during a year. How large the family was, does not appear, but there were at least two persons in it after the mother's death in 1873. During the twelve years of service of Mrs. Mills, Scott testifies that on several occasions the defendant requested him " to select a dress for him, saying he wanted it for his daughter, Mrs. Mills, and I did so." Mrs. Mills does not appear to have been present on any of these occasions. If she had been, she probably would have made her own selection. It was only the declaration of the defendant, made to Scott, that he wanted a dress for his daughter. Scott says defendant paid for the goods purchased of him. Mrs. Mills, in her evidence says: " During the period I served father for compensation, he occasionally purchased a few things for me, but always with my own money." This declaration to Scott was not proper evidence to go to the jury ; it was irrelevant and hearsay evidence. It was receiving the statements of the defendant as evidence for himself, without in any way connecting the plaintiff therewith. It furnishes no proof of the fact claimed to exist, that the defendant provided any dresses or other goods for Mrs. Mills, or that he was providing for her as a daughter, outside of the agreement to pay her for her services, which she insists upon. We cannot see that it in any way rebutted the idea that an express contract for hire existed between the defendant and Mrs. Mills, or in any legal manner corroborated the testimony of defendant. It

had a tendency to mislead the minds of the jury in coming to a correct conclusion, and therefore should not have been admitted.

Hearsay evidence " is uniformly held incompetent to establish any *specific fact*, which in its nature is susceptible of being proved by witnesses who can speak from their own knowledge." 1 Greenleaf Ev., 13th Ed., §99.

The second error assigned is "the overruling of plaintiffs' motion for a new trial, and the refusal to grant the same."

Those portions of the charge of the court as contained in the third and fourth above cited grounds for a new trial, were duly excepted to by counsel for the appellants, and we shall only notice those in examining this case.

In the trial of this cause the court charged as is alleged in the third assigned ground for a new trial, that the daughter could not recover without proving " *a special contract or express promise* that she was to be paid for her services." The daughter was more than twenty-one years of age when the services for her father commenced, and she was unmarried. Her evidence is to the effect that her father promised to pay her for her services. The father testified that he made no such promise. The law raises no presumption of a promise to enable a child to maintain an action against the father to recover compensation; but the reverse may be established by proof of either an express or *implied* contract. An implied contract being proven by facts and circumstance which show that both parties at the time the services were performed contemplated or intended pecuniary recompense. It is competent in such a case for a jury to infer a promise by the father from the surrounding circumstances. It is a presumption of law that the father is not bound to pay a child, though of full age, for services while living with him at home and as one of the family; but this presumption may be overcome by

proof of a special contract, express promise, or an implied promise; and such implied promise or understanding may be inferred from the facts and circumstances shown in evidence. The jury should have been further instructed that if, under all the circumstances of the case, the services were of such a nature as to lead to a reasonable belief that it was the understanding of the parties that compensation should be made for such services, then the jury should find an implied promise. The charge was incorrect, in that it confined them to finding a "special contract or express promise." Guild vs. Guild. 15 Pick., 129; Hart vs. Hart, 41 Mo., 441; Freeman vs. Freeman, 65 Ill., 106; Hilbish vs. Hilbish, 71 Ind., 27; Putnam vs. Town, 34 Vt., 429; Schouler's Dom. Rel., §269, and cases cited; 3 Wait's Actions & Defences, 584, and cases cited.

The other portion of the charge of the court to the jury, which was excepted, in effect, that the plaintiffs could only recover the land, or the value of it; and that if there was no evidence of the value of the land, then the verdict should be for the defendant, we think equally incorrect.

Mrs. Mills, according to her evidence in January, 1870, agreed with her father to work for him in the lifetime of her mother, he promising to pay her for her services. The mother died in 1873. No price had been arranged for such work. She worked under such promise during those years. After the mother's death the defendant made another bargain with the daughter, by which he, in consideration of her agreeing to live with him and serve him as she had been doing during the mother's life, until his death, or sooner discharged, promised to give her in payment a certain piece of land in Gadsden county. There was no written agreement. The defendant denies in his evidence this contract, or any agreement. He did insert in his will a a devise of this land to his daughter, but subsequently de-

stroyed the will, and conveyed the land to another person. John Joiner, a son of the defendant, testified that in 1879 the defendant told him that he had agreed to give Mrs. Mills the land in compensation for the services she had rendered to him. There is no proof of the value of this land. The contract in this case was in contravention of the statute of frauds. The conveyance of the land was the consideration of the promise of service, and that service was continued from the death of the mother in 1873 to the commencement of this action in 1880. No action could be brought upon the contract for want of a written agreement or promise, or some note or memorandum thereof, in writing, signed by the party to be charged, or by some other person by him thereunto lawfully authorized. McClellan's Dig., 208.

The defendant has, by his own action, disabled himself from conveying the land to Mrs. Mills, by deeding it to another person, and therefore forfeits his contract. The contract has been fully executed by the plaintiff. She remains at service until she is discharged by the defendant. She cannot compel a specific performance by her bill in equity, but she has a plain remedy in a court at law for the value of her services, as she may prove them, and is not confined to the value of the land.

"If there be a contract, void for want of writing under the statute of frauds, from the part performance of which by the plaintiff the defendant derives a benefit, he is often liable, not upon the agreement, but upon a *quantum meruit*, to the extent of the benefit received." Inasmuch as the court instructed the jury in this case that the plaintiffs could "recover only the value of the land or the land itself," and that if there was no evidence of the value of the land, the verdict must be for the defendant, there was error. Shute vs. Dorr, 5 Wend., 204; King vs. Welcome, 5 Gray,

41; Kidder vs. Hunt, 1 Pick., 328; 1 Chitty on Contracts, 11th Ed., 81, and cases cited.

The judgment is reversed and a new trial granted.