(No. 26352.—

JOHN J. MEYER *et al.* Appellants, *vs.* AUGUST MEYER *et al.*
Appellees.

*Opinion filed January 20, 1942.*

GLEN J. CAMERON, SAMUEL M. FRIEDLANDER, and GEORGE W. HUNT, for appellants.

EUGENE LEITER, TODD, ARBER, PENDARVIS & ANDERSON, and HAROLD H. VELDE, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This case originated in the circuit court of Peoria county as a suit for partition brought by three children of Hermann C. Meyer, deceased. The controversy in the suit involves the right of the plaintiffs to have certain claims, which had been allowed in the probate court, made a lien against the land or the proceeds of the land, in the partition suit. The circuit court found against the plaintiffs, which decree was affirmed by the Appellate Court for the Second District, and an appeal to this court has been allowed.

John J. Meyer, Henry C. Meyer and Mary Francis Meyer were three of the children of Hermann C. Meyer, deceased, who prior to his death resided upon his farm and took excellent care of him. The complaint for partition set out the heirship and parties in interest, and alleged that the plaintiffs had filed claims in the probate court against the estate of Hermann C. Meyer, which had been allowed as follows: John J. Meyer and Mary Francis Meyer, each in the sum of $2430, and Henry C. Meyer in the sum of $607.50. The complaint concluded with a prayer for partition, and that the plaintiffs have *such other and further relief as might be proper*. The answer of three of the remaining six heirs admitted the interest of the parties in the land, but with respect to the claims in the probate

court alleged a lack of knowledge whether they had been filed or allowed, and further alleged that said claims were unjust, fraudulent, and if they had been allowed it was without notice to the defendants, and that said claims are not valid against the real estate in the partition suit. They also filed a counterclaim praying for an accounting of the rents and profits of the real estate, which was in possession of plaintiffs. The cause was referred to a master in chancery who found that the claims of appellants, allowed in the probate court, should not be charged against the real estate or the proceeds of the sale thereof. The circuit court approved the report of the master in chancery, and in its decree also made findings similar to those of the master in chancery against appellants.

The controversy grows out of the making of three promissory notes by the deceased Hermann C. Meyer payable to each of the appellants. One of the notes was in the following language:

"$500.00                                         June 14, 1932.

For services rendered Value received I promise to pay Henry C. Meyers five hundred dollars one year from date with 6 percent interest from date until paid." and signed by decedent by his mark.

The other two notes, identical with the above except in amount, which were for the sum of $2000 each, were made payable to John J. Meyer and Mary Francis Meyer, respectively. These notes were prepared by Dr. Borin, who was the family physician of the deceased. He testified that Meyer, Sr., wished him to prepare a will, which he refused to do, saying it should be done by an attorney. Decedent then talked about deeding the land outright to the three appellants, with the provision that the latter pay each of the other children $200 each, but abandoned that plan and stated to the doctor that John, Henry and Mary were entitled to more than the other heirs due to the care

they had given him, and the money they had been out in running the farm, and sometimes purchasing the groceries, and then directed the doctor to make the notes in the amount specified.

The appellants were called as witnesses. Henry C. Meyer testified he did not know how his father arrived at the amount of the note, or what he gave it to him. for, and that he did not ask for the note; that the doctor gave all of them to his father, and that he did not know what his brother John or his sister Mary had done to get a note. John J. Meyer said his father called him in and said: " 'Here is a note for you; take care of it.' I thought it was a note for labor. Father did not tell me so at the time he handed me the note. It had not been paid at the time of his death, and I never asked him for payment." The daughter Mary says she saw the note after it was fixed up; that the father handed each of the heirs their note, and then told her to take care of all three of them—" 'take care of them until they are wanted.' I was supposed to keep these notes until he passed away." Both she and John testified that they had no agreement to be paid for work or for taking care of their father.

It also appears that the two brothers farmed the land and gave their father a half-interest in all of the money that was made on the farm. The sister managed the house and cared for her father, who was old and sick. It was shown that the father paid the expenses of running the farm, paid the taxes and made the improvements. It further appears that the proceeds from the farm were used as a general purse to pay household expenses, and after they were paid, the money was divided between the father and the children.

Hermann C. Meyer died May 5, 1935, and Henry C. Meyer was appointed administrator May 22, 1935; an inventory was filed June 26, 1935, and the claim date set for July 15, 1935. The claims were filed January 21, 1936;

service was waived as to the claims of Mary and John and the claims allowed by consent. An administrator *pro tem* was appointed and the same course followed with respect to the claim of Henry C. Meyer. Based on these facts, the master in chancery found that the allowance of the claims in the probate court was not a bar to determining their validity, so far as it is sought to make them a lien upon the real estate; that there was no contract or agreement between the plaintiffs and the deceased that they were to be paid for services for taking care of their father, and that the promissory notes were not given to discharge a legal obligation, but were gifts without legal consideration, and failed for lack of completion by the delivery of the money called for in the notes prior to the death of the maker, and that the notes were made at the request of the deceased in an attempt to dispose of his property in a manner other than by the execution of a will, and recommended that the aggregate of the notes was not a valid claim against the real estate, or proceeds of the sale of the real estate. The court made substantially the same finding in a decree entered in the cause.

The principal contention of appellants grows out of the allegation in the answer that the claims of appellants were unjust, fraudulent and invalid claims against the real estate. It is asserted there was no proof of fraud, and that failure of consideration was not pleaded. It is to be observed that the plaintiffs did not mention or set out any claim in their complaint based on notes, nor did they pray for specific relief. The sole claim in this regard was that claims had been allowed in the amounts before specified, without any reference being made that the claims were based upon notes. The defense asserted was against the alleged judgment in the probate court, and on that issue we think it was competent to show the actual facts.

As a matter of proof, after heirship had been shown and the amount of claims allowed, the plaintiffs, during the

course of the trial, produced the notes and made the proof with respect to the execution. There is nothing in the record to show that the right or jurisdiction of the circuit court to determine the issues relative to the notes was in any way challenged. All of the facts in respect thereto were produced, and produced principally by the complainants. The claim of appellants that the answer fails to state any fraudulent acts connected with the *execution of the notes* fails to consider that the issue in the original complaint was whether claims had been allowed, and not whether unpaid notes were outstanding. The answer stated the claims were fraudulent and invalid claims against the real estate in a partition proceeding, and had been allowed in the probate court without notice to the defendants. No objection or exception was taken to the form or sufficiency of defendants' answer, and therefore, under the Civil Practice act, section 42, sub-section 3, deemed waived.

It is also contended that the defendants asked for no affirmative relief. This was unnecessary as the plaintiffs were asking for the affirmative relief,—viz.,—that the probate judgments be paid out of the real estate, and it was sufficient for the defendants, so far as the real estate was concerned, to show cause why the claims should not be allowed as a charge against the land. The rule seems to be well settled that claims allowed against an estate by an administrator are not liens upon the land of the decedent, and may be questioned by heirs in a proceeding to subject the land to sale for the payment of debts, especially if such heirs had no notice of the allowance of the claims after the adjustment day. *Noe* v. *Moutray,* 170 Ill. 169; *Ford* v. *First Nat. Bank of Stuart,* 201 id. 120; *Atherton* v. *Hughes,* 249 id. 317; *Ward* v. *Durham,* 134 id. 195.

Appellants also claim that the pleading did not set up a want of consideration to the notes as required by the Negotiable Instruments act. The notes were already in

judgment when the partition suit was filed. The course required by appellants would make defendants plead to a note, which so far as the administrator was concerned was merged in the judgment, and it was the judgment the plaintiffs were pleading and not the notes. The plaintiffs were endeavoring to subject the land to the payment of claims allowed in the probate court on notes. To establish this fact they called as a witness the clerk of the probate court to prove the allowance of the claims. Plaintiffs were not content with this, but undertook to show upon what the allowed claims were based, and offered the original notes in evidence, with the testimony of Dr. Borin to show the circumstances under which they were made, after which the plaintiffs were called as adverse witnesses, and from all the testimony, whether produced by or from the plaintiffs, the findings were made by the master and court. Whether there was any burden on the plaintiffs to do more than show the allowance of the claims in the probate court is not raised, but when they did undertake to show all the facts they cannot be heard to say, as a matter of procedure, that the defendants failed to properly plead to an issue plaintiffs had not raised in their complaint.

The facts produced on the trial support the findings of the master and circuit court, and we will not disturb its decree unless the conclusion reached from the facts constitutes error as a matter of law. (*Ackman* v. *Potter,* 239 Ill. 578; *Lingle* v. *Bulfer,* 322 id. 606; *Smith* v. *Smith,* 340 id. 373.) When the master made the finding that the notes were not given to discharge a legal obligation but were uncompleted gifts, and not based on any contract to render services, a decree in favor of the defendants necessarily resulted. It is a general rule of law that services rendered by one member of a family for another, without a contract or agreement to pay for the same, or without a request for the services, are presumed to be gratuitous and

do not constitute sufficient consideration to support a promise to pay for the same. (*Sherman* v. *Whiteside,* 190 Ill. 576; *Switzer* v. *Kee,* 146 id. 577.) A promissory note made solely in consideration of past services rendered the maker by members of the family, under such circumstances is, therefore, wanting in consideration, and can only be considered as a gift. A gift is always revocable until executed, and a promissory note intended purely as a gift to the payee is but a promise to make a gift in the future. The gift is not executed until the note is paid. *Richardson* v. *Richardson,* 148 Ill. 563; *Kelly* v. *Dyer,* 359 id. 46; *Estate of Beatty* v. *Western College,* 177 id. 280; *Williams* v. *Forbes,* 114 id. 167; *Blanchard* v. *Williamson,* 70 id. 647.

There is no complaint made that the findings were contrary to the weight of the evidence. If the want of consideration was shown under a general answer it was because of the fact that the plaintiffs chose to enforce their claim, as ancillary relief in a partition suit, as one established by judgment. In the course of establishing the claims the facts were disclosed by plaintiffs, as found by the court, which was sufficient to bar the relief prayed.

We might add that the record discloses there is an unpaid balance in the hands of the administrator of the estate of Hermann C. Meyer, derived from the sale of personal property, but what we have said pertains to the real estate, or the proceeds of sale of real estate in the partition suit, and not to personal property coming into the hands of the administrator.

The judgment of the Appellate Court for the Second District, affirming the decree of the circuit court of Peoria county, is affirmed. *Judgment affirmed.*