On Rehearing July 7, 1950.
In our original opinion in this case we reversed the decree entered by the Chancellor upon the recommendation of the Master who made specific findings of facts. Upon a reconsideration ex moro motu of the petition for rehearing we have concluded that the material facts as found by the master and approved by the learned Chancellor are supported by competent, substantial evidence. We have also decided that the correct principles of law were applied to the facts as found by the fact finding arbiter. Consequently the petition for rehearing should be granted and the final decree from which this appeal was prosecuted should be affirmed.
The special master, to whom the case was referred by consent of all parties for findings of fact and law, made a comprehensive report the vital aspects of which were approved and adopted by the Chancellor.
It is necessary to bear in mind that we have before us for review a final decree in which the Chancellor affirmed and adopted the report of the special master as to his pertinent findings of facts and law. The appellant in its brief cites many authorities which show the weight which should be given a master's report on review *Page 759 
and for emphasis we digest these authorities here:
"Where parties consent to reference to master for determination and such reference is entered, as a rule of court, findings of master cannot be set aside at bare discretion of court and are entitled to same weight as the verdict of a jury."
 * * * * * *
"It was entitled to the same weight as the verdict of a jury. Croom v. Ocala Plumbing Electric Co., 62 Fla. 460, 57 So. 243." McAdow v. Smith, 127 Fla. 29, 172 So. 448, 450. See also Empire Lumber Co. v. Morris, 102 Fla. 226, 135 So. 508; Kooman Florida Chancery Pleading and Practice, pg. 304.
We accept these authorities and suggest the case of Harmon v. Harmon, Fla., 40 So.2d 209, as additional authority in support of appellant's contention that a master's report is not to be arbitrarily disregarded. A fortiori such contention is well taken when, as here, his report has been adopted and approved by the Chancellor. We have held many times that a chancellor's findings of facts will not be disturbed if the record contains competent substantial evidence to support them.
The master made two main findings of facts:
"Your master is definitely of the opinion that the charge of undue influence asserted by the defendants to have been practiced upon the mortgagor and grantor, Frances Evelyn Sikes, by the mortgagee and grantee, Ella Elizabeth (Bessie) Sikes, has not been proven." (Master's Report, Tr. pp. 681-682)
"2. There is no evidence whatsoever in the record of any agreement between the mother, Frances Evelyn Sikes, and the daughter Ella Elizabeth (Bessie) Sikes, whereby the former agreed to pay the latter for the services which the daughter had rendered over a period of many years." (Master's Report, Tr. pp. 683-684)
Upon these established facts (established by the Master's Report which is supported by substantial evidence in the record) we must base our opinion. In order to adhere to our initial conclusion we must either reverse the findings of the master and the chancellor's approval and adoption thereof or disregard the principles of law which we deem to be controlling. In essence all we now have are a mortgage and note under seal given by a mother to her daughter in appreciation of the fact that the daughter lived with her and cared for her (the mother) over an extended period of years. We are confronted with the master's findings that no prior agreement or understanding existed between mother and daughter in regard to payment for these services.
Our original opinion proceeded on the theory "when the cause was considered here on petition for certiorari to review the order of the court below on motion of the defendants-appellees to dismiss the amended bill to foreclose, our denial of the petition placed in repose, in the then state of the pleadings, the legal sufficiency of the consideration of the note and mortgage and the enforceability thereof by the amended bill of complaint." We think this is a true and proper application and interpretation of the controlling principles based, as we said, on Sections 674.27, 674.28, Florida Statutes, 1941, "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, * * *" and "What constitutes value." By denial of certiorari we said in effect that there was equity in the bill and if on final hearing the real plaintiff should support her allegations by competent evidence, she should recover. Here again we run point blank into what we consider to be the controlling question of law: Are services rendered by a daughter to hermother without any prior agreement for compensation sufficientconsideration to support a mortgage and note under seal in aforeclosure action against the mother's estate? Initially, by reversing the lower court, we answered this query in the affirmative. The answer denies consideration but not under oath. However, the issue of consideration was raised and regardless of the presumption of a valuable consideration (because the denial was not in an answer under oath) the Master and the Chancellor found and determined that the evidence in *Page 760 
support of defendants-appellees' denial of consideration was sufficiently strong to overcome the mere presumption which attached to the note and mortgage.
In our first opinion we cited four Florida cases as controlling on the question of adequacy of the consideration for the note and mortgage. Three of these cases upheld the validity of deeds
given for love and affection in return for services rendered. A mortgage is an executory contract as distinguished from a deed which is an executed contract and consequently the same principles of law would not be applicable. Hendrie v. Hendrie, 5 Cir., 94 F.2d 534. The case of Cunningham v. Weatherford,159 Fla. 864, 32 So.2d 913, 915, needs only a superficial examination to distinguish it. In that case we had for our consideration an appeal from an order dismissing plaintiffs' suit on a promissory note given to them (husband and wife) by the decedent during his lifetime pursuant to an agreement that the wife would look after maker's home, prepare his meals and nurse and care for him for balance of his life. The opinion states "The amended declaration alleges that the real consideration was looking after the decedent's home, preparing his meals, nursing him in sickness and caring for him. It also alleges that this was done by Daisy Belle for more than two years after the agreement was made and before the note was executed." (Italics supplied). The ruling below was reversed and the cause reinstated for testimony to be taken in support of the allegation quoted above. This case cannot be controlling here when the master found as a fact that no agreement, either express or implied, existed prior to the execution of the mortgage. In that case neither payee was a son or daughter or close relative of the maker and the presumption of gratuitous services was not called into play; yet, we held the declaration good because there was an allegation of apre-existing agreement or contract for compensation.
The presumption raised by 674.27, Florida Statutes 1941, F.S.A., is clearly a rebuttable presumption (and in this case such presumption was rebutted and overcome), especially when this section is read in conjunction with Section 674.31, "Failure of consideration". At common law it was sometimes held that a note under seal needed no proof of consideration as the presumption of consideration raised by the seal itself was conclusive or, under other interpretations, that the seal itself supplied the consideration. 10 C.J.S., Bills and Notes, § 143, p. 599. If such ever were the law of this state it was changed by the adoption of the Uniform Negotiable Instrument Law which makes the presence of a seal raise a presumption that will shift the burden of proof of lack of consideration to the defendant unless he denies such consideration by an answer under oath. See Sec. 52.08, Fla.Statutes 1941, F.S.A. The appellees carried and met such burden. The authorities cited by appellant amply support the rule that love and affection supported by services rendered constitute sufficient consideration to support a deed. We are convinced that this rule should not, and does not, apply to a mortgage or note, for Section 674.28, Florida Statutes 1941, F.S.A., is determinative of what is meant by value. This section is identical with Section 25 of the Uniform Negotiable Instrument Law. For annotations we are referred to 5 Uniform Laws Anno., Sec. 25. There, in note 81, we find the following: "Past services rendered without expectation of compensation are not a sufficient consideration for a note. Mason v. Gardner, 186 Mass. 515,71 N.E. 952. See also Harper v. Davis, 1911, 115 Md. 349,80 A. 1012, 35 L.R.A., N.S., 1026, Ann.Cas. 1913A, 861; Matter of Simmons' Estate, 1905, 48 Misc. 484, 96 N.Y.S. 1103; Strevell v. Jones, 1905, 106 App. Div. 334, 94 N.Y.S. 627; Matter of Bradbury, 1905, 105 App. Div. 250, 93 N.Y.S. 418; Matter of Pinkerton's Estate, 1906, 49 Misc. 363, 99 N.Y.S. 492; Gooch v. Gooch, 1916,178 Iowa 902, 160 N.W. 333, L.R.A. 1917C, 582."
Although no Florida cases appear in this annotation, we find our position supported by language in the case of Valentine v. Hayes, 102 Fla. 157, 135 So. 538, 540, where this Court said: "An Act like the *Page 761 
Uniform Negotiable Instruments Law, which has been adopted in Florida (Comp. Gen. Laws 1927, Sec. 6760, et seq. [F.S.A. § 674.01 et seq.]) as well as in a majority of the states of the Union, should receive a uniform interpretation and construction in all of the states where it prevails if the beneficial purpose of having a uniform law on the subject is to be subserved. Therefore, it is pertinent to resort to the holdings in other jurisdictions where the act is in force in order that we may arrive at an interpretation and construction of the act which should be followed in Florida."
Also the annotation in 140 A.L.R. 491 following the case of Meyer v. Meyer, 379 Ill. 97, 39 N.E.2d 311, gives added strength to our conclusion. There it was said: "There is little conflict in respect to the rule that when it is clear that services of one member of a family to another were intended to be gratuitous at the time of their rendition they can be no consideration for a subsequent note or other executory promise by the recipient of the services to pay therefor." (See list of annotations following p. 492)
The cases which uphold the note as a valid obligation enforceable against the decedent's estate are collected in Section IV of this annotation entitled "Note or Other Instrument as Importing Consideration" (p. 500) but in each of these cases the evidence failed to support the allegation in the defendant-executor's answer that there was no agreement for compensation, either expressed or implied, prior to the execution of the note. Here on basis of the master's finding alone we by cursory examination distinguish those cases from the one now under consideration.
A case in point is Peters v. Altizer, 127 W. Va. 92,31 S.E.2d 552, wherein it was held: "Services, usually and commonly rendered by a person standing in close blood relationship to person to whom services are rendered, do not constitute consideration for a note subsequently executed by recipient of services unless it is shown that services were of such natureand rendered under such circumstances as would evince anintention of payment at time services were rendered." (Italics supplied.)
The conclusion which we reach appears to be supported by the overwhelming weight of authority in this country. Our first premise that "no consideration" is a defense even to a note under seal is accepted as the unanimous view by Professor Williston in his authoritative work on contracts. "At the present time thereis no doubt that failure of consideration would everywhere beheld a defense." (Italics supplied.) Williston on Contracts, Vol. 1, Sec. 109, p. 375. Our second premise, that natural love and affection, coupled with services rendered without any prior agreement for compensation, although sufficient to support a deed, is not sufficient consideration for a note, seems to be the almost unanimous holding of all jurisdictions. After diligent and thorough search we are unable to find a single case which is in accord with appellant's view. Again we refer to the case of Meyer v. Meyer, supra, where it is said: "A gift is always revocable until executed, and a promissory note intended purely as a gift to the payee is but a promise to make a gift in the future. The gift is not executed until the note is paid." [379 Ill. 97, 39 N.E.2d 314]
This remains a true statement though the note be given in appreciation for services previously rendered as in the instant case and the note is not enforceable against the estate of the maker.
We are impelled to observe that the master's findings, as adopted and approved by the Chancellor, should not be captiously set aside and disregarded where, as here, they are sustained by substantial evidence and no showing is made that they were clearly erroneous. The master made the express finding that there was no evidence "whatsoever in the record of any agreement" for compensation for services rendered by the daughter to the mother. As a matter of law, he held that such services were presumptively gratuitous and used as his authority our pronouncement of the law on the subject as set forth in Mills v. Joiner, 20 Fla. 479, which reads: "It is presumption of law, that the father is not bound *Page 762 
to pay a child, though of full age, for services while living with him at home, and as one of the family, but this presumption may be overcome by proof of a special contract, or an express or implied promise or understanding; and such implied promise or understanding may be inferred from the facts and circumstances shown in the evidence." (Italics supplied.)
After reciting the foregoing excerpt the master stated, "There is absolutely no proof in the record of any such agreement between Frances Evelyn Sikes and her daughter Ella Elizabeth (Bessie) Sikes." (Italics supplied). Obviously the master held that there was no special contract, nor was there an impliedpromise or understanding that the daughter would be compensated for her services to the mother.
The mortgage recited that the consideration was a reimbursement to the mortgagee for services rendered by her. The note which is secured by the mortgage is payable — on demand. If appellant had become embittered toward the decedent and had made demand for payment during the life of her mother and upon refusal of payment had instituted a foreclosure suit, no court of conscience could have been persuaded to rule in her favor. However, if services rendered to a parent without pre-existing contract or agreement for compensation constitute a valid consideration for a note, then foreclosure should be granted in such a case as well as in the instant suit.
Not only does the evidence show that there was no prior existing agreement expressed or implied for compensation to Bessie for services rendered to her mother but the clear implication which the testimony does permit is that the mother, during what eventually turned out to be her last illness, developed a desire to promise without a legally sufficient consideration, that she, or possibly her estate, would compensate Bessie at some future date. The services, as is disclosed by the notation appearing on the face of the mortgage, had been"rendered" prior to the execution of the executory contract. Laudable though the mother's desire may have been, the law will not sustain such a promise to make a gift in futuro. Nor should equity, were it not required to follow the law, uphold such a promise. Ella Elizabeth (Bessie) Sikes is by no means destitute. She offered the will for probate, took under its provisions, and assumed the position of testamentary trustee. Before her death her mother deeded to Bessie two Flagler Street lots. The deed to those lots was assailed by appellees in the instant suit but was properly upheld because it was an executed contract and had as its consideration natural love and affection. Bessie has a life estate in the subject property which she accepted and will retain but if foreclosure were granted she might obtain fee simple title to the property and the rights of the remaindermen would be completely destroyed. Unquestionably, Bessie rendered valuable services to her mother. During those years of service she received all of the necessities of life from her mother. She has never occupied a prejudicial position. Besides the Flagler Street lots which she owns in fee simple she enjoys a preferential status under the will.
Had the mother intended to cut off all of her heirs save the appellant she might have destroyed her will and drawn another in which she might have named the appellant as sole beneficiary or devisee. Could it be that such direct method was not pursued because of Article X, Section 4 of the Constitution of Florida, F.S.A.? Said section provides: "Nothing in this Article shall be construed to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists; nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law." (Italics supplied.)
Even though the property which is the subject of this foreclosure constituted a homestead it might have been deeded to the appellant and said deed upheld as an executed contract upon nothing more than love and affection as a consideration. Moreover, the mother might have executed an enforceable mortgage if it had been founded upon a valuable consideration. However, since the consideration for the note *Page 763 
and mortgage in this case was specifically set forth as services "rendered" by the daughter and there is no proof in the record of a pre-existing agreement for compensation, the device apparently attempted to be used in lieu of a will cannot be sanctioned for, under such circumstances, the rule of law in this State is as stated in Mills v. Joiner, supra, wherein it was held, as previously recited, that the presumption of law is that a parent is not bound to pay a child, though of full age, for services while living with said parent at home and as one of the family in the absence of proof of a prior special contract or an express or implied antecedent promise to compensate the child. The execution of the note amounted only to a gratuitous promise to make a gift in futuro. If the mortgage should be foreclosed and appellant should become the successful bidder at the sale (which is the case more often than not and certainly may be presumed in this instance for appellant has bound herself to the present leasee to bid up to $50,000) an ingenious method of circumventing Article X, Section 4 of our Constitution would have the stamp of approval of this Court. We cannot subscribe to such result.
In addition to the contention that there was no valuable consideration for the note and mortgage, appellees further present the argument that the real party at interest, namely Ella Elizabeth (Bessie) Sikes, is estopped from maintaining the instant foreclosure suit because of her action subsequent to her mother's death in probating her mother's will, becoming Executrix thereunder, accepting the trusteeship of the testamentary trust established thereby and the benefits of said trust as life beneficiary thereof. We hold that this contention is likewise well founded. It is true that after having first begun the foreclosure action in her own name she assigned the mortgage and note to the Florida National Bank Trust Company at Miami as trustee which institution was permitted to become party plaintiff and to continue the suit in its representative capacity but this fact does not relieve Ella Elizabeth (Bessie) Sikes from the effect of estoppel. Initially she had two courses open to her. She could have accepted the benefits and the trusteeship under the will after filing it for probate as she did, or she might have repudiated the will or at least renounced the trust and thereafter possibly have sought foreclosure of the mortgage. She could not do both. She made her election and will not now, in equity, be permitted to assume two inconsistent positions or by her own action in bringing the instant suit voluntarily renounce her trusteeship. Nor will she, after having assumed the position of trustee, be permitted to destroy the trust property which as trustee she is duty bound to protect in the interest of all the cestui que trustent including the remaindermen. In the case of Strong v. Willis, 3 Fla. 124, 52 Am.Dec. 364, it was held: "A trustee cannot renounce, after having accepted the trust, but must execute the provisions of the trust deed" — and that "he cannot be both trustee and assailant of the trust deed."
We further stated in that case: "One of the rules alluded to above is, that, in attempting an injury to the trust property, the trustee acts without warrant, and in breach of his duty. What more serious injury — what more intolerable breach of trust, than to assert a right in the trust property, for his own individual purposes? — to ask that property which, by his own act, has been confined to his care, to guard and protect for the wife and children of the grantor, shall be sold and appropriated to his own use?"
In the case of Crawford v. Crawford, 129 Fla. 746, 176 So. 838, 840, we said: "The allegations of the bill of complaint are sufficient to show that E.L. Crawford acquired the legal title to a one eleventh (1/11) interest in the lands by purchase, but while he continued to act as trustee for others for the purpose of holding the title to the lands for their benefit, he could not assume as an individual and in his own right a position antagonistic to that of his cestui que trustant [sic]. That a trustee cannot so act is too elementary to require citation of authority."
The Supreme Court of Pennsylvania in the case of Ross v. Barclay, 18 Pa. 179, 55 Am. Dec. 616, stated: "A trustee who accepts *Page 764 
cannot renounce. It is unnecessary to quote an authority for that. He can be discharged only by the decree of a court of Equity, whose power in this state is vested in the common pleas; by force of a provision in the deed, or by consent of all the parties interested; and though I know of no case in point, I do not hesitate to pronounce that his acceptance, like that of an executor, must be entire." (Italics supplied.)
The principle which we apply in this case is well established in the law of wills and the underlying reason for the rule exists as well with reference to testamentary trustees as it does in the case of beneficiaries or executors under a will. "One who elects to accept a benefit extended to him by a will is bound to give effect to all the provisions of the instrument and perform the burdens imposed on him therein, including the renunciation of any inconsistent rights or claims." 57 Am.Jur. 1037. See also annotations in 82 A.L.R. 1510, 93 A.L.R. 1384 and 49 L.R.A., N.S., 1073.
In the case of Burns v. First National Bank of Joliet, 1922,304 Ill. 292, 136 N.E. 695, 696, it was said: "Whether the contract alleged by the complainant was so proved is the subject of argument, but whether it was or not is of no importance. If the contract was made as alleged, and executed on the part of the complainant by performance, she could not ask its enforcement, because she elected to take under the will, and thereby ratified all its provisions * * * a beneficiary cannot accept that which is given by the will, and set up any right or claim, however legal or well founded it may have been, which would defeat or prevent a full operation of the will."
We hold that the services rendered by the appellant to her mother without a pre-existing contract or agreement for compensation to her for said services did not constitute a valuable consideration for the note and mortgage and that the appellant is estopped from maintaining the present action by virtue of her acts in probating the will, becoming executrix thereunder, accepting the trusteeship of the testamentary trust established by the will as well as the benefits of said trust as life beneficiary thereof.
Although we entertain a sympathetic attitude toward appellant because of her unfortunate infirmity, we do not believe that established law should be changed or disregarded in order to accommodate or satisfy the impellent influence of human emotions.
We affirm the decree entered by the learned Chancellor upon the recommendation of the Master who made specific findings of fact which appear to be supported by competent, substantial evidence.
Affirmed.
THOMAS, SEBRING and ROBERTS, JJ., concur.
ADAMS, C.J., dissents.
TERRELL and CHAPMAN, JJ., dissent and adhere to former opinion.