It is not without some hesitation that I dissent in this case for I am conscious of the provision of the code of ethics for judicial officers to the effect that unless departure from a cardinal principle of law is evident personal opinions should yield for the sake of stability and uniformity. However, I am constrained to the belief that the principles set out in the majority opinion, which I deem to be error, are so fundamental in nature as to seriously trench upon the very foundation of our Negotiable Instrument Law.
The special master, to whom the case was referred by consent of all parties for findings of fact and law, made a comprehensive report which was approved and adopted by the Chancellor on final hearing and a decree entered in accordance therewith. The facts are ably set out by Mr. Justice Chapman in his majority opinion and it is only with his conclusions of law that I cannot agree.
It is necessary to bear in mind that we have before us for review a final decree in which the Chancellor affirmed and adopted the report of the special master as to his findings of fact and law. The appellant in its brief cites many authorities which show the weight which should be given a master's report on review and for emphasis we digest these authorities here:
"Where parties consent to reference to master for determination and such reference is entered, as a rule of court, findings of master cannot be set aside at bare discretion of court and are entitled to same weight as the verdict of a jury."
 * * * * * *
"It was entitled to the same weight as the verdict of a jury. Croom v. Ocala Plumbing Electric Co., 62 Fla. 460, 57 So. 243." McAdow v. Smith, 127 Fla. 29, 172 So. 448, 449. See also Empire Lumber Co. v. Morris, 102 Fla. 226, 135 So. 508; Kooman Florida Chancery Pleading and Practice, pg. 304.
I accept these authorities and suggest the case of Harmon v. Harmon, Fla., 40 So.2d 209, as additional authority in support of appellant's contention that a master's report is not to be arbitrarily disregarded. A fortiori such contention is well taken when, as here, his report has been adopted and approved by the Chancellor. We have held many times that the chancellor's findings of fact will not be disturbed if the record contains substantial evidence in support thereof.
The master made two main findings of fact:
"Your master is definitely of the opinion that the charge of undue influence asserted by the defendants to have been practiced upon the mortgagor and grantor, Frances Evelyn Sikes, by the mortgagee and grantee, Ella Elizabeth (Bessie) Sikes, has not been proven." (Master's Report, Tr. p. 681-682)
"2. There is no evidence whatsoever in the record of any agreement between the mother, Frances Evelyn Sikes, and the daughter, Ella Elizabeth (Bessie) Sikes, whereby the former agreed to pay the latter for the services which the daughter had rendered over a period of many years." (Master's Report, Tr. p. 683-684)
Upon these established facts (established by the Master's Report which is supported by substantial evidence in the record) we must base our opinion. To reach the majority's conclusion we must either reverse the findings of the master and the chancellor's approval and adoption thereof or disregard the principles of law which I deem to be controlling. In essence all we now have are a mortgage and note under seal given by a mother to her daughter in appreciation of the fact that the daughter lived with her and cared for her (the mother) over an extended period of years. We are confronted with the Master's finding that no prior agreement or understanding existed between mother and daughter in regard to payment for these services. *Page 756 
The majority opinion proceeds on the theory "when the cause was considered here on petition for certiorari to review the order of the court below on motion of the defendants-appellees to dismiss the amended bill to foreclose, our denial of the petition placed in repose, in the then state of the pleadings, the legal sufficiency of the consideration of the notes and mortgage and the enforceability thereof by the amended bill of complaint." We think this is a true and proper application and interpretation of the controlling principles based, as the able Justice says, on Section 674.27, Florida Statutes, 1941, F.S.A., (Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration) and Section 674.28, Florida Statutes 1941, F.S.A., (What constitutes value). By denial of certiorari we said in effect that there was equity in the bill and if on final hearing the real plaintiff should support her allegations by competent evidence, she should recover. Here again we run point-blank into what I consider to be the controlling question of law: Are services rendered by a daughter to her motherwithout any prior agreement for compensation sufficientconsideration to support a mortgage and note under seal in aforeclosure action against the mother's estate? The majority opinion, by reversing the lower court, answers this query in the affirmative. The answer denies consideration but not under oath. However, the issue of consideration was raised and regardless of the presumption of a valuable consideration (because the denial was not in an answer under oath) the master and the chancellor found and determined that the evidence in support of defendant-appellee's denial of consideration was sufficiently strong to overcome the mere presumption which "attached to the note and mortgage."
The majority opinion cites four Florida cases as controlling on the question of adequacy of the consideration for the note and mortgage. Three of these cases upheld the validity of deeds
given for love and affection in return for services rendered. A mortgage is an executory contract as distinguished from a deed which is an executed contract and consequently the same principles of law would not be applicable. The case of Cunningham v. Weatherford, 159 Fla. 864, 32 So.2d 913, 915, needs only a superficial examination to distinguish it. In that case we had for our consideration an appeal from an order dismissing plaintiffs' suit on a promissory note given to them (husband and wife) by the decedent during his lifetime pursuant to anagreement that the wife would look after maker's home, prepare his meals and nurse and care for him for balance of his life. The opinion there states "The amended declaration alleges that the real consideration was looking after the decedent's home, preparing his meals, nursing him in sickness and caring for him. It also alleges that this was done by Daisy Belle for more than two years after the agreement was made and before the note was executed." (Italics supplied.) The ruling below was reversed and the cause reinstated for testimony to be taken in support of the allegation quoted above. Can this case be controlling here when the master found as a fact that no agreement, either express or implied, existed prior to the execution of the mortgage? In that case neither payee was a son or daughter or member of the maker's family and the presumption of gratuitous services was not called into play; yet this Court held the declaration good because there was an allegation of a pre-existing agreement or contract for compensation.
The presumption raised by 674.27, Florida Statutes 1941, F.S.A., is clearly a rebuttable presumption (and in this case such presumption was rebutted and overcome), especially when this section is read in conjunction with Section 674.31 (Failure of consideration as a matter of defense). At common law it was sometimes held that a note under seal needed no proof of consideration as the presumption of consideration raised by the seal itself was conclusive or, under other interpretations, that the seal itself supplied the consideration. 10 C.J.S., Bills and Notes, § 143, p. 599. If such ever were the law of this state it was changed by the adoption of the Uniform Negotiable Instrument Law which makes the presence of a seal raise a presumption that will shift the burden of proof *Page 757 
of lack of consideration to the defendant unless he denies such consideration by an answer under oath. See Sec. 52.08, Fla. Statutes 1941, F.S.A. The authorities cited by the majority amply support the rule that love and affection supported by services rendered constitute sufficient consideration to support a deed. I am convinced that this rule should not and does not apply to a mortgage or note. We must now turn to Section 674.28, Florida Statutes 1941, F.S.A., to determine what is meant by value. This section is identical with section 25 of the Uniform Negotiable Instrument Law. For annotations we are referred to 5 Uniform Laws Anno., Sec. 25. There, in note 81, we find the following:
"Past services rendered without expectation of compensation are not a sufficient consideration for a note. Mason v. Gardner, 186 Mass. 515,71 N.E. 952. See also Harper v. Davis, 1911,115 Md. 349, 80 A. 1012, 35 L.R.A., N.S., 1026, Ann.Cas. 1913A 861; Matter of Simmons, 1905, 48 Misc. 484, 96 N.Y.S. 1103; Strevell v. Jones, 1905, 106 App. Div. 334, 94 N.Y.S. 627; Matter of Bradbury, 1905, 105 App. Div. 250, 93 N.Y.S. 418; Matter of Pinkerton, 1906,49 Misc. 363, 99 N.Y.S. 492; Gooch v. Gooch, 1916, 178 Iowa 902, 160 N.W. 333, L.R.A. 1917C 582."
Although no Florida cases appear in this annotation, we find our position strengthened by language in the case of Valentine v. Hayes, 102 Fla. 157, 135 So. 538, 540, where this Court said:
"An act like the Uniform Negotiable Instruments Law, which has been adopted in Florida (Comp. Gen. Laws 1927, § 6760, et seq. [F.S.A. § 674.01 et seq.]) as well as in a majority of the states of the Union, should receive a uniform interpretation and construction in all of the states where it prevails if the beneficial purpose of having a uniform law on the subject is to be subserved. Therefore it is pertinent to resort to the holdings in other jurisdictions where the act is in force in order that we may arrive at an interpretation and construction of the act which should be followed in Florida."
Also the annotation in 140 A.L.R. 491 following the case of Meyer v. Meyer, 379 Ill. 97, 39 N.E.2d 311, gives added support to our conclusion. There it was said:
"There is little conflict in respect to the rule that when it is clear that services of one member of a family to another were intended to be gratuitous at the time of their rendition they can be no consideration for a subsequent note or other executory promise by the recipient of the services to pay therefor." (See list of annotations following p. 492)
The cases which uphold the note as a valid obligation enforceable against the decedent's estate are collected in Section IV of this annotation entitled "Note or Other Instrument as Importing Consideration" (p. 500) but in each of these cases the evidence failed to support the allegation in the defendant-executor's answer that there was no agreement for compensation, either expressed or implied, prior to the execution of the note. Here on basis of the master's finding alone we by cursory examination distinguish those cases from the one now under consideration.
For a case in point, let us examine Peters v. Altizer, 127 W. Va. 92, 31 S.E.2d 552, where it was held:
"Services, usually and commonly rendered by a person standing in close blood relationship to person to whom services are rendered, do not constitute consideration for a note subsequently executed by recipient of services unless it is shown thatservices were of such nature and rendered under suchcircumstances as would evince an intention of payment at timeservices were rendered." (Italics supplied)
The conclusion which I reach appears to be supported by the overwhelming weight of authority in this country. My first premise that "no consideration" is a defense even to a note under seal is accepted as the unanimous view by Professor Williston in his authoritative work on contracts. "At the present time thereis no doubt that failure of consideration would everywhere beheld a defense." Williston on Contracts, Vol. 1, Sec. 109, p. 375. My second premise, *Page 758 
that love and affection, coupled with services rendered without any prior agreement for compensation, although sufficient to support a deed, are not sufficient consideration for a note, seems to be the almost unanimous holding of all jurisdictions. After diligent and thorough search we are unable to find a single case which is in accord with the majority view. Again we refer to the case of Meyer v. Meyer, supra, where it is said [379 Ill. 97, 39 N.E.2d 314]:
"A gift is always revocable until executed, and a promissory note intended purely as a gift to the payee is but a promise to make a gift in the future. The gift is not executed until the note is paid."
This remains a true statement though the note be given in appreciation for services previously rendered as in the instant case and the note is not enforceable against the estate of the maker.
Finally I am constrained to assert that the master's findings as adopted and approved by the Chancellor, should not be captiously set aside and disregarded where, as here, they are sustained by substantial evidence and no showing is made that they were clearly erroneous. He made the express finding that there was no evidence "whatsoever in the record of any agreement" for compensation for services rendered by the daughter to the mother. As a matter of law, he held that such services were presumptively gratuitous and used as his authority our pronouncement of the law on the subject as set forth in Mills et ux. v. Joiner, 20 Fla. 479, which reads:
"It is presumption of law, that the father is not bound to pay a child, though of full age, for services while living with him at home, and as one of the family, but this presumption may be overcome by proof of a special contract, or an express or implied promise or understanding; and such implied promise or understanding may be inferred from the facts and circumstances shown in the evidence."
After reciting the foregoing excerpt the master stated, "There is absolutely no proof in the record of any such agreement between Frances Evelyn Sikes and her daughter Ella Elizabeth (Bessie) Sikes." (Italics supplied). Obviously the master held that there was no special contract, nor was there an impliedpromise or understanding, that the daughter would be compensated for her services to the mother, prior to the execution of the note, and the mortgage recited that the consideration was a reimbursement to the mortgagee for services rendered by her.
I would affirm the decree entered by the learned Chancellor. The effect of such holding would not be to deprive the appellant of anything she would receive under the will but it would protect the rights of the remaindermen created by the will. The appellant would retain her life estate in the property but the mortgage would, and must of necessity, fail for want of consideration.